JEREMIAH TOWNSHEND AND JOHN B. BROOKE, EXECUTORS OF JOHN TOWNSHEND, *vs.* WILLIAM TOWNSHEND AND OTHERS.—*December* 1848.

Caveators who are the assailants of a will, and the actors who originated a petition to prevent its being admitted to probate, their allegations of fact being controverted, are entitled to be placed upon the record in the attitude of plaintiffs, and are therefore entitled to open and conclude the argument before the jury empannelled to try the issues sent from an orphans court to the county court, in relation to such controverted facts.

Upon the trial of issues of fact, designed to impeach the validity of a will, that instrument must be in evidence before the jury, and, if not produced in the county court by the register of wills, the caveators, plaintiffs upon the record, ought to have coerced its production by a *subpœna duces tecum*, directed to that officer.

But where the *factum* of the will was admitted by the pleadings, and assumed by the issues, evidence is unnecessary to establish that conceded fact.

Where the county court, under such circumstances, excludes the evidence of the subscribing witness to establish the conceded *factum* of the will, it is not error.

A witness, the neighbor of a deceased testator, had known him well for twenty-five years, often had dealings with him, and would never have hesitated to buy from, or sell to him, land or negroes for any amount, may prove, that, in his opinion, the testator was of sound and disposing mind, and capable of executing a valid deed or contract, during all the period of the witness's acquaintance with him.

The mere naked opinions of other persons, than the subscribing witnesses to a will, not occupying the position of medical men, are inadmissible in reference to the mental capacity of a testator, whose will may be controverted.

The impression made upon the mind of a witness, by the conduct, manner, bearing, conversation, appearance, and acts of a testator, in various business transactions, is not mere opinion; it is *knowledge*, and strictly analogous to the cases of personal identity and handwriting.

It is an error to suppose, that the maxim, "once insane, is presumed always to be insane," is unqualified in its character, or of universal application.

A continuing insanity is never to be presumed, where the malady or delusion under which the testator labored, was, in its nature, accidental and temporary.

Where there is proof of general rationality, and also of delusion, in a testator, it would be an encroachment on the rights of the jury for the court to assume, that the delusion under which the testator labored, was habitual, and therefore put the onus of proof, that he was free of such delusion at the execution of his will, on the caveatees.

The character of the delusion under which a party labors, as whether temporary or habitual, is within the exclusive province of the jury.

The circumstance, that proof of delusion is all on one side, does not authorise the court to direct the jury, that it proves the fact. The jury have the right to refuse their credit to it.

Where there is testimony in a cause conducing to prove, that a will was the direct consequence of the delusion under which the testator labored; a delusion calculated to pervert his judgment with respect to the disposition of his estate, it is perfectly clear, that he could not be considered as possessing a testamentary capacity, although, upon other subjects, he may have been rational and sane.

APPEAL from *Prince George's* county court.

On the 16th May 1846, the appellants offered for probate the following will :

"In the name of GOD, Amen, I, *John Townshend*, of, &c., being, &c., do make and publish this my last will and testament, that is to say :

"First, and principally, I commit my soul in the hands of ALMIGHTY GOD, and my body to the earth, to be decently buried on the land I bought of *Otho B. Beall*, at the discretion of my executors hereinafter named, and request that no funeral sermon be preached at my burial, but that prayers be read over me by a member of some *Protestant* denomination; and, after my just debts and funeral charges are paid, I give, devise and bequeath as follows, viz :

"I will and direct, that my executors shall pay, provided I do not in my lifetime, to the *British* minister or embassador, accredited at *Washington* city, the sum of eighty-five pounds sterling, being the amount in the aggregate of certain sums of money, which, in and by the last will and testament of my father, *Samuel Townshend*, deceased, are directed to be paid out of his estate to certain persons therein named, being at that time citizens of *London*, in *England*, all of which will more fully appear, reference being had to said last will and testament, now remaining of record in the office of the register of wills of *Prince George's* county: the said amount of eighty-five pounds sterling to be distributed and paid, as far as may be practicable, by the said minister, to and among the persons in the will mentioned, or their legal representatives, according to the sums therein stated, to be due them respectively; and if any of the said persons, or their legal representatives, cannot

be found, the amount payable to them, to be distributed among poor objects of charity in the city of *London* aforesaid. I wish it to be expressly understood, that I do not direct the payment of this money, because of any obligation imposed on me to that effect, but simply because I consider the same to have been honestly due by my father, who desired it to be paid: and my brother *Leonard*, who was the executor of my father, having neglected to pay it, I have thought proper to do so. This direction, however, is by me expressly confined to the principal sum aforesaid, and no interest whatever is to be paid by my executor thereon.

"*Item.*—I give and bequeath to all my negroes or servants, old and young, and their increase, their freedom; and do direct, that my executor hereinafter named, shall, immediately after my demise, procure and deliver to them respectively, from the proper office in said county, such certificates as may be necessary to secure to them their full enjoyment of their freedom; the said certificates, when thus procured, to be paid for by my executor out of my estate. And whereas also, in and by a certain deed of manumission, by me heretofore executed, bearing date the 24th of December 1831, and recorded in, &c., on the 20th March 1832, my said negroes and their increase are to be liberated, manumitted, and set free, from and after the time of my death: and some doubts have been expressed as to the validity of said deed, I have, for remedy thereof, inserted the aforegoing clause herein, and in case the said deed and this, my will, should be insufficient to manumit and free from slavery my said negroes, and their said increase, I hereby give and bequeath them, and their said increase, to my nephew, *Jeremiah Townshend*, and his heirs, not for the use of himself and his heirs, but for the use of the said negroes and their increase, save the amount *of one cent per capita per annum*, which the said slaves, and their said increase, are hereby required to pay forever hereafter to the said *Jeremiah Townshend* and his heirs."

"*Item.*—I give, devise and bequeath, to my said negroes, and their said increase, all my property, both real and personal, to be divided amongst them equally, share and share alike, to

them and their heirs, forever.  This devise and bequest is to take effect, even if, for any cause at all, at present unforeseen by me, the said negroes, or their said increase, should, after my death, be deprived of their said freedom and held in bondage.  And lastly, I do hereby constitute and appoint the said *Jeremiah Townshend* and *John B. Brooke*, executors of this my last will and testament, hereby revoking and annulling all former wills by me heretofore made, declaring this, and none other, to be my last will and testament.  In testimony whereof, I have hereunto set my hand and seal, this 17th day of September, in the year of our Lord 1844.

Joнn Townshend,   ( Seal. )"

"Signed, sealed, published and declared, as and for his last will and testament, by the said *John Townshend*, the above named testator, in presence of us, who, at his request, in his presence, and in presence of each other, have signed our names as witnesses thereto.

> *Phil. Chew,*
> *W. B. C. Worthington,*
> *James J. Chew.*"

On the 8th June 1846, the appellees, brother and nephew of the deceased, filed their petition in the orphans court of *Prince George's* county, representing, that at the date of the said instrument of writing, and for many years before, and ever since, to the time of his death, the said *John Townshend* was continually, and without intermission, in a state of mental derangement and insanity, and utterly incapable of making a valid disposition of his property by last will and testament, by reason of his unsoundness of mind, as aforesaid; and they aver and charge, that the said instrument of writing, purporting as aforesaid, for the cause aforesaid, is utterly null and void, and they therefore enter this, their caveat, against the probate thereof, as and for the last will and testament of the said deceased.  That by the said paper, purporting as aforesaid, the said deceased devised and bequeathed nearly all his property, of every kind and description, to his negroes, to the exclusion of all his heirs and next of kin; that for many years prior to his death, and at the time of making the said pretended will,

the deceased was so much under the influence and control of certain opinions and feelings, originating in a morbid and un- sound state of mind, in reference to the safety of his soul and his duty in regard to his slaves, as made him a monomaniac on these subjects, (even if he were of sound and disposing mind on other subjects, which these petitioners wholly deny;) and from these peculiar feelings and opinions, excited and operated upon by the acts and fraudulent persuasions of his ne- groes, or some of them, who had acquired a predominant con- trol and influence over him in all that related to themselves, he was utterly incapable of making a valid will and testament, in regard to the said slaves and his other property; and your petitioners aver and charge, that when the said paper was exe- cuted, the said deceased was under the influences aforesaid, which were so overweening and controlling, as to deprive him of the power of resisting them. And so the petitioners aver, that the said pretended will was obtained by the said artful practices and fraudulent persuasions of his negroes, or some of them, at a time, and under circumstances, when his mind was incapable of exercising any free agency, and too feeble to resist their influence, and that for these reasons the same is null and void; and they further, in like manner, enter this, their caveat, against the probate thereof, as and for the last will and testa- ment of the said deceased, &c.

The answer of *John B. Brooke* admitted, that the petitioners are related to *John Townshend,* the deceased; that *J. T.* de- parted this life in May last; that at the time of his death, he was a very aged man. That on the 17th September 1844, the said *J. T.* made and executed an instrument of writing, as his last will and testament, and which has, since his death, been lodged in the office of the register of wills of *Prince George's* county, for probate, and that this respondent and the said *Jeremiah T.,* were named and appointed as executors thereof; and that the said *John T.,* at the date of the said will, and for many years before, and up to the time of his death, entertained, or at any rate expressed, some very peculiar views on the subject of religion and the scriptures, but, in all other respects, he was, as far as this respondent knew anything of

him, a man of good practical judgment and sense, and, in matters of business, always appeared to possess very considerable acuteness. The respondent is not aware, and does not admit, that the disposition of his property by *J. T.*, was superinduced by, or originated in, a morbid and unsound state of mind, in reference to the safety of his soul, and his duty in regard to his slaves; and this respondent further states, that he has no knowledge of any persuasion or improper influence exercised by the negroes of the said *J. T.*, or any of them, in relation to the execution of the said will.

The answer of *Jeremiah Townshend* reiterated the statements of his co-executor, and also alleged, that he was constrained further to declare, that upon the subject of the disposition of his estate, the said *J. T.* always thought and believed, that he was acting under the immediate agency of the ALMIGHTY, and under the conviction, that he had seen and conversed with GOD face to face, and that he had been told by GOD, to make such a will; this respondent believes he executed said paper. This respondent further declares, that the negro slaves of said *John Townshend* had considerable influence with him, but to what extent said influence was exerted in reference to the execution of said paper, this respondent does not know and cannot state.

Upon this petition and answer, the orphans court directed the following issues, framed by the caveators, to be transmitted to the county court for trial :

1st. Whether the said *John Townshend*, at the time of signing the said paper or instrument of writing, purporting to be his last will and testament, was of sound and disposing mind, and capable of executing a valid deed or contract.

2nd. Whether at the time mentioned in the preceding issue, was the said *John Townshend* urged thereto by the importunities of his negro slave, *Thomas Gantt*, or of any other of his slaves, the devisees in said paper mentioned, or by the importunities of the defendants, or either of them, or any other person or persons whatever, which he was too weak to resist, and under circumstances which left him not free to act in the disposition of his estate.

3rd. Whether the signature of said *John Townshend* to said paper, purporting as aforesaid, was his own free and voluntary act, to which he was induced, with knowledge of its contents and import, and without the exercise of an undue influence, by the slaves aforesaid, or any of them, or by the defendants, or either of them, or by any other person or persons whatever, which, in his then situation, and then imbecility of mind, prevented him from making a disposition of his estate according to his own free will.

4th. Whether the execution of the said paper by the said *John Townshend*, was procured by fraud or by misrepresentation, by the said negro slaves, or any of them, or by the said defendants, or either of them, or by any other person or persons whatever, acting with the privity or by the direction of them, or any of them.

5th. Whether the said paper, purporting as aforesaid, be void, by reason of undue influence, fraudulent devices, importunities, misrepresentations and deceits, practised by the said negro slaves, or any of them, or by the said defendants, or either of them, or by any other person or persons whatever, with them, or either by privity or direction upon the said *John Townshend*, to induce him to execute the said paper.

6th. Whether the said *John Townshend*, at any time subsequent to the execution of said paper, purporting as aforesaid, was desirous of altering the same, and whether he was prevented therefrom by the management, fraud, undue influence, or importunities, of the said negro slaves, or any of them, or of the said defendants, or either of them, or by any other person or persons whatever, by their, or either of their, procurement or direction.

The jury found the first five issues for the caveators, and the sixth for the caveatees.

The *county court* adjudged the record to be transmitted to the *orphans court*, with costs to the caveators.

1st Exception. At the trial of this cause, after the jury had been empannelled, the caveators, by their counsel, claimed of the court the right to open and conclude the argument before the jury, which said right the caveatees, by their counsel, resisted,

and claimed, as a matter of right, that the caveatees should open and conclude the argument before the jury. The court, however, were of the opinion, that the caveators had a right to open and conclude the argument before the jury. The caveatees excepted.

2ND EXCEPTION. At the trial of the issues in this cause, after the court had ruled as aforesaid, and after the counsel for the caveators had made his opening statement to the jury, the caveators insisted, it was incumbent on the caveatees to prove the execution of the will, to try the validity of which the issues aforesaid were framed, before they, the caveators, could be obliged to offer any evidence to impeach the validity of said will. The court, (MAGRUDER, C. J., and CRAIN, A. J.,) were of opinion, that the instrument of writing to which the issues relate, must be in evidence to the jury, and the execution of it by the alleged testator, ought to be proved by the caveatees, rather than the caveators, when it is to be read in evidence to the jury; until the paper is before the jury, neither party can properly offer evidence to establish or destroy its validity, and without proof or admission of its execution, a trial of the issues could not well be had; the party objecting to the instrument cannot be required to prove its execution. The practice is for the caveatees to offer some proof of its execution, then its validity is presumed, until it is impeached by the party objecting to it. The caveatees excepted.

3RD EXCEPTION. At the trial of the issues in this cause, the caveatees, to establish the _factum_ and execution of the said paper writing in said issues mentioned, proved to the jury, by _James J. Chew_, one of the attesting witnesses, that he attested the execution of said paper, together, and at the same time, with the other attesting witnesses thereto, and in the presence of the said _John Townshend_, who, either before, or after, or at the time of said attestation by said witnesses, acknowledged the same to be his will; that at the time of said attestation, or immediately thereafter, or before the said _John Townshend_ entered and partook of a conversation, (the subject matter of which this witness does not recollect,) with the said attesting witnesses, the said caveatee, _Brooke_, and the said _John Towns-_

3    v.7

*hend*, at that time, knew what he was engaged in; and that the said *W. B. C. Worthington*, whose name is hereto subscribed as an attesting witness, is deceased; and the general habit of the witness is, when he is called upon to attest a paper, to see that the party signs the paper or acknowledges it, before he, the witness, attests it. That at the time of the execution of the said paper, the said witness was a deputy clerk in the office of one of the attesting witnesses, *Philemon Chew*, then register of wills for this county, and the said will was executed in the office of said register; and the caveatees further proved, by the said *Philemon Chew*, the other attesting witness alive, that he is satisfied, from seeing his name as a witness to said paper in his own handwriting, that he attested the paper, but had no recollection whatever of the circumstances under which it was done. That his (witness's,) memory has been much impaired within the last few years; and the caveatees further offered to prove, by said last named attesting witness, that from his general practice of attesting various papers, such as bonds and wills, and other papers requiring attestation for divers persons, at different periods, that he is satisfied the said paper writing was signed in his presence, and in the presence of the other two attesting witnesses, by the said *John Townshend*, and published and declared by the said *John Townshend* as, and for his last will and testament, in the presence of the said witness, and the other two attesting witnesses; and that witness attested the same in the presence of the said *John Townshend*, at the time of said publishing and declaring, and at his request; which said general practice of the said witness, the counsel for the caveators objected, as being inadmissible; which objection the court sustained, and were of opinion, that the said evidence so proposed to be offered was inadmissible, because it is not to be ascertained in the trial of these issues, whether the will is executed so as to devise real estate. The testimony therefore asked of *Philemon Chew*, even if admissible in a contest between heirs and devisees, (which this court is not called upon to decide,) could not be pertinent to any of the issues now to be tried, especially as proof of the execution of the paper by the alleged testator has been offered, and indeed its exe-

cution is admitted, and the proof at this stage of the case, is only offered to prove the execution of the paper; to which opinion of the court the caveatees excepted.

4TH EXCEPTION. On the trial of the issues in this cause, the caveatees, to maintain the issues on their part joined, offered to prove by a competent witness, *Joseph B. Hill*, (after he had been sworn, and stated to the jury, that the testator in this cause had been a neighbor of his, and he had known him well for the preceding twenty-five years, and that he had often had dealings with him, and would never, during his acquaintance with him, have hesitated to buy from, and sell to him, land and negroes for any amount that might have been agreed on between them,) that, in his opinion, based upon the foregoing facts detailed by him to the jury, and from his acquaintance, as testified to by him, with the late *John Townshend*, the said *John Townshend* was of sound and disposing mind, and capable of executing a valid deed or contract, during all the period of said witness's acquaintance with him; to which said opinion so proposed to be offered, the caveators objected as inadmissible. The court, (MAGRUDER, C. J.,) sustained the said objection, and refused to permit said testimony, as to his opinion, go to the jury; because, although the subscribing witnesses to a will may express their opinion, touching the sanity or insanity of the alleged testator at the time of executing it, the professional men may likewise, yet other witnesses can only testify as to facts, and, of course, cannot testify their opinion in respect to his sanity or insanity. The books say, the subscribing witnesses may express their opinion; why say so, if all others who may have formed an opinion, are also at liberty to testify that opinion? The witness cannot be brought within any of the exceptions to the general rule, which requires witnesses to state facts, and not give opinions; to which said opinion of the court sustaining said objection, and refusing to permit said testimony to go to the jury, the caveatees excepted.

5TH EXCEPTION. At the trial of this cause, and after the evidence contained in the *third* and *fourth* exceptions, which is to be considered as part of this, had been given, the cavea-

tors, to maintain the issues on their part joined, proved to the jury, by a large number of witnesses, that *John Townshend*, at different intervals, from 1816 up to 1842, and during the year 1845, was under the conviction, that he had, at various times, personal sight of, and intercourse and conversation with, the ALMIGHTY. They also proved a variety of facts and circumstances, to show the views of the testator with reference to the Divinity, several sects of christians, and his peculiar notions upon the subject of eternal punishment; the circumstances and command, as he alleged, under which he made his sales of produce, and the introduction of party politics, in conversation and in connexion with his imputed, extraordinary religious sentiments. The supernatural mode in which he supposed himself directed to manumit his negroes, and other evidence tending to show that the deceased labored under a religious delusion, both with respect to his property and negroes.

The caveatees then proved, that for the last thirty years, the said *John Townshend* was very conversant with the scriptures, and quoted them upon all occasions, to enforce the doctrines advanced by him; that he was a man of unimpeachable morality and integrity; fair in all his dealings with his fellow men; was a farmer, and commenced life with a small property of nearly two hundred acres of land, and a very small personal property; that he died at the age of eighty-one years, possessed of a real estate, amounting to thirteen or fourteen hundred acres, and a large stock of negroes, more than fifty in number; that he was a very eccentric man, but, in business matters, he was possessed of considerable shrewdness; he was never known by witness to oppose the prescription of his physician; that he kept accounts at stores, with his physicians, and other individuals, as is the habit of most of persons in the community, and would pay them at the end of the year, either in person, or send the money by one of his servants; that he would consult witness on matters of business, and always spoke rationally, and knew how to take care of his interest. He appeared reverently to believe all the doctrines of the christian religion. That finding, on one occasion, that the doctrines promulgated by him were doing more harm than good, and, in some measure,

giving to those young men with whom he was acquainted, immunity to sin; he then told every body better, and that all men would not be saved; that most of his wild and eccentric conversations were for talk sake, as witness judged from the manner of deceased at the time of the conversations; that deceased was very fond of religious controversy, and would laugh heartily in these controversies; in his last sickness, he was aware of his approaching end, and was very composed, and said he would die. That his disease was dropsy in the chest, and the symptoms are choking and shortness of breath; that he considered he was impelled, by a high sense of religious obligation, and a conscientious discharge of his duty; and the family physician of deceased proved, that, in his opinion, was of sufficient sense and judgment to execute a will or deed, disposing of either real or personal estate, and that in matters of business, deceased was shrewd and astute. They further proved the extent, nature and character, of many transactions of business in which he had been concerned, and his rationality therein.

The caveatees, by their counsel, after the testimony by the witnesses for both sides had been detailed, all of which is contained in this and the preceding exceptions, which are hereby made and considered as a part of this exception, prayed the court to instruct the jury :

1st. That if they find from the evidence aforesaid, that at the time of executing and acknowledging the paper propounded for probate in this cause, the said *John Townshend* was of sound and disposing mind, and capable of executing a valid deed or contract, then the said *John Townshend* had a sufficient testamentary capacity.

2nd. If the jury shall find from the evidence aforesaid, that the said *J. T.*, at the time he executed the paper propounded for probate, was under no other delusion, than that of believing that the ALMIGHTY specially revealed himself, by manifesting his supreme will to him in regard to all matters of business or importance occurring to said *Townshend*, and that he was bound implicitly to obey said revelations of the will of the ALMIGHTY GOD; and if they further find from the evidence, that

in other matters, while acting under said delusion, he acted rationally, and as a man of sound and disposing mind, and one capable of making a valid deed or contract, then the said alleged delusion is not of itself sufficient to avoid said will.

3rd. If the jury shall find from the evidence aforesaid, that the alleged delusion, (if any,) under which the said *J. T.* was acting, at the time of executing the paper propounded as his last will and testament, did extend to the other acts of said *T.;* and if they further find, that said delusion, although existing in the same degree, did not prevent the said *T.* from acting, at the time of said other acts, as a man of sound and disposing mind, and capable of executing a valid deed or contract, would act, then it is competent for the jury to find, that said *T.* was of sound and disposing mind, and capable of executing a valid contract, at the time of executing said paper so propounded, notwithstanding they may believe he was, at the time of executing said paper, acting under said alleged delusion.

And thereupon the caveators prayed the court to instruct the jury :

1st. That if they find in the execution of the will in this cause, the said *J. T.* acted under mental delusion, with reference to the disposition of the property therein devised, then they must find for the caveators.

2nd. The caveators further prayed the court to instruct the jury, that if they find from the evidence, that prior to the execution of the will, the said *John Townshend* labored under delusion, as to the disposition of the property therein devised, then it is incumbent upon the caveatees to prove his freedom from said delusion, at the period of the execution of said will.

The court granted the *first* prayer of the caveatees, and the *first* prayer of the caveators, without objection of counsel on either side, and refused to grant the *second* and *third* prayers of the caveatees, and granted the *second* prayer of the caveators.

The court refused to grant the *second* and *third* instructions asked for by the caveatees, and for the following other reasons: they are calculated to mislead the jury, inducing them to believe, that in judging of the testamentary capacity of the

deceased, they might exclude from their consideration the other facts and circumstances in proof, and which are to be taken in consideration with the matter in evidence, upon which the prayer is grounded; the unreasonable provision of the will, and all the facts and circumstances in proof, tending to show the incapacity of the deceased to make a disposition of the estate, with judgment and understanding with reference to the amount and situation of his estate, and the relative claims of the different persons who should have been the objects of his bounty. The court is not to ascertain the value of each portion of the testimony, but all of it going to show capacity or incapacity, at the time of making the will, is to be considered by the jury, who are to decide the question of sanity, and from the whole testimony the jury are to determine, whether the deceased, at the time of executing the will, was of sound and disposing mind, and capable of executing a valid deed or contract. The whole of the testimony, except so much as the exceptions state, was objected to, having gone to the jury without objection; and the purpose for which any portion of it, (unless when otherwise mentioned,) not being stated, or required to be stated, the second prayer of the caveators is granted, because, although the presumption of law is, that every testator was, at the time of executing the instrument, of sound, disposing mind, and capable of making a valid deed or contract, and the burden of proof lies upon those who assert the mind to have been unsound; yet if a previous state of insanity has been established to the satisfaction of the jury, then the onus is upon the party who would establish the will.

The court expresses no opinion touching the value or weight of any part, or of the whole of the testimony, which has gone to the jury, they being the exclusive judges thereof. To which said refusal to grant the said second and third prayers of the caveatees, and the granting of the said second prayer of the caveators, the caveatees excepted.

The caveatees appealed to this court.

The cause was argued before DORSEY, C. J., MARTIN and FRICK, J.

By ALEXANDER and DIGGES for the appellants, and
By W. H. TUCK and T. F. BOWIE for the appellees.

MARTIN, J., delivered the opinion of this court.

It appears from the record in this case, that at the trial of the cause in the county court, after the jury had been impannelled, the appellees, as the caveators of the will in controversy, claimed the privilege of opening and concluding the argument before the jury. This claim was resisted by the appellants, who maintained, that they were entitled, as the caveatees of the will, to begin and conclude the argument, upon these issues. The court below decided in favor of the position taken by the caveators, and whether they erred in the opinion thus expressed by them, is the question raised for our consideration, by the *first* bill of exceptions.

It appears from the proceedings, as exhibited by the record, in this case, that on the 16th of May 1846, the instrument of writing of the 17th of September 1844, purporting to be the last will and testament of *John Townshend,* was propounded for probate in the orphans court of *Prince George's* county, by the appellants, as executors; that on the 5th of June, in the same year, the caveat and petition of the appellees was interposed, in which they aver and charge, that the pretended will was invalid, upon the two-fold ground, that the testator was, at the period of its execution, mentally incapable of making a valid deed or contract, and that the paper purporting to be his will, was procured from him by fraud or undue influence; and, in their petition, they prayed, that, for the purpose of trying the validity of the said pretended last will and testament, issues might be transmitted to *Prince George's* county court, involving the objections presented by the caveat.

The appellants appeared in the orphans court on the 20th of October 1846; one of them, *John B. Brooke,* in his answer to the petition of the appellees, distinctly denies the allegations of the caveat, with respect both to incapacity and fraud, or undue influence, as therein contained, and the issues in dispute, and transmitted to the county court for the determination of a jury, are predicated on an affirmation of facts, introduced

for the purpose of impeaching the will by the caveators on the one side, and a negation of those facts by the caveatee in his answer. And it appears to us to be perfectly clear, that in a case thus situated, the caveators are to be regarded as the assailants of the will; as the *actors* who originated this proceeding, and who were therefore entitled to be placed upon the record in the attitude of plaintiffs. And, assuming this to be the true position of the caveators, it results from the decision of the Court of Appeals, in the case of *Kearney against Gough*, 5 *Gill & John.*, 457, that they possessed the right to open and close the argument before the jury.

In that case, an action was instituted against the defendant, for a libel on the plaintiff's wife. The defendant pleaded a justification as to a part of the libel, and contended at the trial, that inasmuch as he had justified the language charged to him in the declaration, the affirmative of the issue was upon him, and that he had the right to open and conclude the argument. But the court below refused the application, and the Court of Appeals, in concurring with this opinion, say :

"The decision is in conformity with the settled practice throughout the State, giving to the *plaintiff on the record* the opening and conclusion, except in cases of avowry for rent in arrear, in relation to which the practice is not uniform."

The ruling of the court below upon the point presented in this exception, was, therefore, we think, correct; and we proceed to consider the questions raised for our examination, by the *second* bill of exceptions.

We are informed by this exception, that after the counsel for the caveators had made his opening speech before the jury, the caveators insisted, that upon the issues which the jury were sworn to try, it was incumbent on the caveatees to prove the execution of the will, to try the validity of which the issues were framed, before the caveators could be obliged to offer any evidence to impeach its validity; and that this application was granted by the court below, who held :

"That the instrument of writing to which the several issues relate, must be in evidence to the jury, and the execution of it by the alleged testator, ought to be proved by the caveatees

4      v.7

rather than the caveators, when it is to be read in evidence to the jury.''

We cannot concur with the ruling of the county court as disclosed to us by this exception. The *factum* of the will was admitted, and indeed assumed by the issues in the cause, and the introduction of evidence to establish a conceded fact, was an act of supererogation, and therefore to be treated as irrelevant and inadmissible. The court was certainly correct in declaring, that it was indispensably necessary to place before the jury the instrument of writing, in reference to which the issues were framed; but if the will was not produced in court by the register of wills, to whose custody it had been confided, it was the duty of the caveators, who were the plaintiffs upon the record, and entitled to open the cause, to have coerced its production by a *subpœna duces tecum*, directed to that officer. A *subpœna* of this character, would have been ordered by the court, on the application of the caveators.

It follows from the views we have thus presented, with respect to the questions suggested by the second exception, that the evidence introduced, and proposed to be adduced, by the caveatees in the *third* exception, was entirely irrelevant and inadmissible. It was proposed to prove, by the testimony of the attesting witnesses, the *factum* of a paper, the execution of which was admitted by the pleadings and issues in the cause. This could not be done; and the act of the court below, in excluding evidence, the aim and object of which was to establish the execution of a will in this condition, cannot be complained of as error, because, according to the law of the case, as now enunciated, the testimony proposed to be offered by the appellants, would be considered, in legal contemplation, as in all respects, incompetent. The ruling of the court, as expressed in this bill of exceptions, must therefore be affirmed; but whether the law announced by the court below, with regard to the point intended to be reserved by that exception, assuming, that it was incumbent on the appellees to have proved affirmatively the *factum* of the will, be correct or not, has become an abstract question, upon which it is not proper for this court to express an opinion.

It appears from the *fourth* exception, that the caveatees produced a witness, who proved, that he had been a neighbor of the testator, and had known him well for twenty-five years; that he had often had dealings with him, and would never, during his acquaintance with him, have hesitated to buy from him, or sell to him, land and negroes, for any amount that might have been agreed on between them. This evidence was admitted without objection. The caveatees then offered to prove by the witness, that, in his opinion, based on the foregoing facts, and from his acquaintance with the testator, the testator was of sound and disposing mind, and capable of executing a valid deed or contract, during all the period of the witness's acquaintance with him. The court, on objection interposed by the caveators, refused to permit the witness to express his opinion with respect to the capacity of the testator. An exception was taken to this ruling of the court, and the counsel for the appellants have insisted, that after the witness had proved, that he was for a series of years in the habit of frequent intercourse with the testator, in the way of business, and in the interchange of friendly offices, he might be required to express his opinion, based on such observation and facts, in relation to the capacity of the testator.

The proposition advanced by the counsel for the appellants, is unquestionably correct, and the court below erred, we think, in the opinion expressed by them in this exception.

It is stated by the elementary writers upon this subject, that the attesting witnesses are considered in the law as placed round the testator, to protect him against fraud in the execution of his will, and to judge of his capacity; that the testator is intrusted to their care; and it is their duty to inform themselves of his capacity, before they attest his will; and it is on this ground, that these witnesses are permitted to testify as to the opinions they formed of the testator's capacity, at the time of executing his will. And it is equally true, as a general proposition, that the mere naked opinions of other persons, not occupying the position of medical men, are inadmissible in reference to the mental capacity of a testator, whose will may be controverted.

But the testimony proposed to be submitted by the caveatees, to the jury as illustrative of the mental condition of the testator, was not the mere naked, isolated, unsupported opinion of the witness. The impression made upon the mind of the witness by the conduct, manner, bearing, conversation, appearance, and acts of the testator in various business transactions, for a long series of years, is not mere opinion, it is *knowledge*, and strictly analogous to the cases of personal identity, and handwriting, which are constantly established in the law courts, by the opinion and judgment of persons who have enjoyed the opportunity of observing the person, or handwriting sought to be identified, or proved. *Mr. Greenleaf*, in his *Treatise on Evidence*, says :

"It is the constant practice to receive in evidence, any witness's belief of the identity of a person; or, that the handwriting in question is, or is not, the handwriting of a particular individual: provided he has any knowledge of the person, or the handwriting." 1 *Greenlf. Ev.*, sec. 440.

In the case of *Clary against Clary*, II *Iredell*, 83, the late *Judge Gaston*, in delivering the opinion of the *Supreme Court of North Carolina*, upon a subject similar to the one now under consideration, says :

"The judgment, founded on actual observation of the capacity, disposition, character, temper, peculiarities of habit, form, features, or handwriting of others, is not mere opinion: it approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of those things to be acquired; and the result thus acquired, should be communicated to the jury, because they have not had the opportunities of personal observation; and because, in no other way can they effectually have the benefit of the knowledge, gained by the observation of others."

In the case of *Grant vs. Thompson*, 4 *Con. Rep.*, 203, the *Supreme Court of Connecticut* held, that though the mere opinions of witnesses relative to the sanity of a party, are not admissible, yet their opinions, in connection with the facts on which they are founded, are admissible. The court said :

"The county court rejected the mere opinions of witnesses, relative to the defendant's insanity, but admitted them in connection with the facts on which they were founded; and in doing this, they discriminated soundly and legally. This is not a novelty, but sanctioned by the usual practice of courts, in such cases." They say: "Although it would be dangerous in its tendency to admit the uncorroborated opinion of a witness, relative to the operations of another's mind, yet, when it is found to be presumptively supported by facts, it carries with it a convincing weight. The best testimony the nature of the case admits of, ought to be adduced; and on the subject of insanity, it consists in the representation of facts, and of the impressions which they made."

The same doctrine was maintained in a strong opinion, delivered by judge *Duncan* in *Rambler vs. Tryon*, 7 *Sargt. & Rawles' Rep.*, 92; and in *Morse vs. Crawford*, 17 *Verm. Rep.* 502. The court declared, "that the law was well settled, and especially in that State, that a witness may give his opinion in evidence, in connection with the facts upon which it is founded, and as derived from them; though he could not be allowed to give his opinion, founded upon facts proved by other witnesses."

So in *Swinburn on Wills*, 72, 2 *Stark. Ev.*, 1279, *(n.)* it is said: "It is not sufficient for a witness to depose, that a testator was mad, or beside his wits, unless a sufficient cause can be given to prove this deposition: as that, he saw him do such acts, or heard him speak such words, as a person having reason would not have done or spoken." Thus discriminating between mere abstract opinion, and opinion predicated upon, and fortified by facts, within the personal observation of the witness.

In the celebrated case of *Wright against Tatham*, 5 *Clark & Fin.*, 670, it was held by the *House of Lords*, that letters written by third persons, since deceased, to a party whose will was disputed, and found among his papers, are not admissible evidence of his competency, without some proof that he, himself, *acted upon them;* but it will be found, by an examination of the elaborate opinions, pronounced *seriatim* in this cause, that though the mere naked opinions of witnesses, would not have

been considered as admissible, with respect to the capacity of a testator, yet such opinions would become evidence in connection with the facts upon which they were founded.

Upon this subject *Alderson, Baron,* said : "The object of laying such testimony before the jury, is to place the whole life and conduct of the testator, if possible, before them, so that they may judge of his capacity; for this purpose you call per.sons who have known him for years, who have seen him frequently, who have conversed with him, or corresponded with him.

"After having thus ascertained their means of knowledge, the .question is generally put, as to their opinion of his capacity. I .conceive this question really means to involve an inquiry, as to the *effect* of all the acts which the witnesses had seen the testator do for a long series of years, and the manner in which he was, during that period, treated by those with whom he was living in familiar intercourse. This is not properly opinion, like that of *experts,* but is rather a compendious mode of putting one, instead of a multitude of questions to the witness under examination, as to the acts and conduct of the testator."

We think, therefore, that the caveatees were entitled to the opinion of this witness, with respect to the capacity of the testator, in connection with the facts upon which it was founded, and that the county court were wrong in rejecting this testimony. This question does not appear to have been heretofore directly adjudicated by this court, although the implication from the opinion in the case of *Brooke vs. Berry,* 2 *Gill,* 98, is, that evidence of this character would have been regarded as admissible.

It appears from the *fifth* exception, that after the parties had offered in evidence a variety of proof, touching the mental capacity of the testator, and his competency to make a valid will, the caveators asked from the court two instructions, and the caveatees prayed the court to grant three instructions to the jury. The court granted, by consent, the *first* prayer of the caveators, and the *first* prayer of the caveatees; and also granted the second prayer of the caveators, and rejected the second and third prayers of the caveatees.

The second prayer of the caveators, is in the following words: "That if the jury find from the evidence, that prior to the execution of the said will, the said testator labored under delusion as to the disposition of the property therein devised, then it is incumbent on the caveatees to prove his freedom from such delusion, at the period of the execution of the will."

The counsel for the appellees, in maintaining the correctness of this instruction, have relied upon the principle, "that as the law presumes every one to be sane until the contrary is proved, it is on the other hand to be presumed, that a man's mind remains unchanged; and when, therefore, lunacy or delusion has been once established, it is incumbent on him who alleges the validity of the act, to prove that it was done at a lucid interval." *Semel furibundus, semper furibundus presumitur.* 2 *Stark. Ev.*, 1276.

It is an error however to suppose, that the maxim : "Once insane, presumed to be always insane," is unqualified in its character, or is of universal application. An examination of the authorities will show, that a continuing insanity is never to be presumed, where the malady or delusion under which the testator labored, was in its nature accidental and temporary.

In the case of *Hix against Whittimore*, 4 *Medf. Rep.*, 547, the court say : " There must be kept in view, the distinction between the inferences to be drawn from proof of an habitual or apparently confirmed insanity, and that which may be only temporary. The existence of the former, once established, would require proof from the other party, to show a restoration or recovery; and in the absence of such evidence, insanity would be presumed to continue. But if the proof only shows a case of insanity, connected with some violent disease, with which the individual is attacked, the party alleging the insanity, must bring his proof of continued insanity, to that point of time which bears directly upon the subject in controversy: and not content himself, merely, with proof of insanity at an earlier period."

In *Cartwright vs. Cartwright*, 1. *Phillim. Rep.* 100, it was held, "that where *habitual* insanity in the mind of a person is established, that the party who would take advantage of an

interval of reason must prove it;'' recognising the distinction between habitual and temporary delusion, with respect to this doctrine of presumption.

By referring to the language of this prayer, it will be seen, that the court instructed the jury, that if they believed from the evidence, that prior to the execution of the will, the testator labored under delusion as to the disposition of his property, it was incumbent on the caveatees to prove that he was liberated from such delusion at the period of the execution of his will; thus assuming that the delusion under which the testator labored was habitual in its character.

This the court could not do, without encroaching upon the rights of the jury.

It is no answer to this view of the instruction granted by the court, to say, that the evidence presented a clear case of habitual delusion, and showed that the morbid image of which this testator had become the victim accompanied him through the greater portion of his life. Still, the character of the delusion was a question within the exclusive province of the jury, and the court erred in assuming as a fact, that it was permanent or habitual.

The case of the *Charleston Insurance Company vs. Corner*, 2 *Gill*, 426, is conclusive upon this point. In that case, the court said.

''The jury doubtless would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance, that it is all on one side, does not authorise the court to direct the jury, that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right, to weigh the credibility of evidence.''

We have no hesitation in declaring, that the court were correct in rejecting the second and third prayers of the caveatees.

There certainly was testimony in the cause, conducing to prove, that the paper in controversy, was the direct consequence and offspring of the delusion under which this testator labored; a delusion calculated to pervert his judgment and to control his will, with respect to the disposition of his estate; and assum-

ing this to be true, it is perfectly clear, that he could not be considered as possessing testamentary capacity, although, upon other subjects, he may have been rational and sane.

In *Shelford on Lunacy*, 296, it is said: "Proof of the existence of partial insanity will invalidate contracts generally, and will be sufficient to defeat a will, the direct offspring of that partial insanity, both in the courts of common law, and in the ecclesiastical courts; although the testator, at the time of making it, was sane in other respects, upon ordinary subjects."

We think the court were correct in the opinion expressed by them in the *first* exception, and in rejecting the *second* and *third* prayers of the appellants, as exhibited in the *fifth* exception.    We also affirm the judgment of the court in the *third* exception.

But we think that they erred in the opinion expressed by them in the *second* and *fourth* exceptions; and in granting the *second* prayer of the appellees, in the *fifth* exception.

The judgment of the county court is therefore reversed, and a *procedendo* will be awarded.    For although the jury rendered a verdict in favor of the caveators, upon the issues involving the questions of fraud and undue influence, it is impossible to affirm that a different result might not have been produced, if there had been no error in the rulings of the court below, with respect to the capacity of the testator.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.