SARAH P. NELSON, ET AL.,

*vs.*

HOWARD B. PATRICK AND LULU B. HEARN.

*Deeds: setting aside;. Evidence: insufficiency of—.*

The impression made upon the mind of a witness by the conduct, manner, bearing, conversation, appearance and acts of a testator in various business transactions, for a long series of years, is not mere opinion; it is knowledge.　　　　p. 510

On an appeal from a decree setting aside a deed on the ground of undue influence and want of capacity, the decree was reversed on the ground of insufficiency of evidence.　　　p. 511

*Decided April 5th, 1916.*

Appeal from the Circuit Court for Wicomico County. (In Equity.)　(STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Benjamin A. Johnson* and *Wm. L. Rawls* (with whom were *Joseph L.* and *L. Claude Bailey* on the brief), for the appellants.

*Alonzo L. Miles* and *Frederick A. Webb* (with whom was *Amos W. W. Woodcock*), for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 28th of November, 1904, Albion H. Patrick, of Wicomico County, Maryland, purchased from W. G. Smith and E. W. Smith a vacant lot in Salisbury, Maryland, on which, during the years 1905 and 1906, he erected a dwelling house, costing between twelve and thirteen hundred dollars, in which he and his family resided until the time of his death. In March, 1908, he caused the lot and improvements to be conveyed by William G. Smith, E. W. Smith and Lily R. Smith, his wife, to his wife, Elizabeth A. Patrick. He died intestate in December, 1911, and in July, 1914, Mrs. Patrick died intestate leaving four brothers and three sisters her only heirs at law. In October, 1914, Mr. Patrick's two children by his first wife, his only heirs at law, filed a bill of complaint in the Circuit Court for Wicomico County against the brothers and sisters of Mrs. Patrick and their respective wives and husbands to have the deed to her declared null and void on the ground that their father, at the time of its execution, was not capable of making a valid deed or contract. Two of the heirs of Mrs. Patrick answered the bill, admitting the facts alleged and consenting to a decree, but the remaining five heirs denied the averments of the bill and resisted the relief prayed, and this appeal is from the decree of the Court below setting aside the deed and appointing a trustee to convey the property to the plaintiffs.

The record contains between three and four hundred pages of testimony, most of which is cumulative, and consists of the

statements of the great number of witnesses examined of the length of time they had known Mr. Patrick and of their opinion as to his ability to make a valid deed or contract. It would serve no useful purpose to discuss this evidence at length, and we shall confine ourselves to a reference to the more important and significant facts upon which we base our conclusion.

Mr. Patrick was a farmer of very moderate means, and until the last five years of his life resided on his farm in Wicomico County, about four miles from Salisbury. He and his second wife, Elizabeth A. Patrick, were married about twenty-six years. They never had any children, but at the time of their marriage Mr. Patrick had four very young children, two boys and two girls. One of the girls was drowned about 1893. The other children lived with their father and stepmother. Lulu B. Hearn, one of the plaintiffs, married Dallas Hearn, of Salisbury, and left home in 1910. George died in 1911, and Howard B. Patrick, the other plaintiff, lived with his father and stepmother until his father's death, and with Mrs. Patrick until her death in 1914. The relations between the members of the family were of the most cordial and friendly character, and Mrs. Hearn states that the plaintiffs never gave Mrs. Patrick a cross word, and that "she was as good as any stepmother ever was."

In 1904, Mr. Patrick, realizing that his health had become impaired and that he was no longer able to do the work on his farm, and moved, it seems, by a further consideration to which we shall hereafter allude, determined to sell his farm and to move to Salisbury to live. He, accordingly, on the 28th of November, 1904, purchased the vacant lot on Smith street from W. G. and E. W. Smith for $250.00, paid $100.00 on account of the purchase price and took from them a receipt showing for what the money was paid. He then moved with his family to Salisbury and began the erec-

tion of his dwelling house on the lot. He employed W. J. Johnson or William J. Johnson & Co. to do the work, and the record contains a statement rendered him by William J. Johnson showing the work done and materials furnished in the erection of the house; a number of receipts for money paid him by Mr. Patrick on account as the work progressed, and Mr. Patrick's check, dated March 17th, 1906, for the final payment of $279.85. On the day Mr. Patrick purchased the lot his son, Howard B. Patrick, purchased from W. G. and E. W. Smith the adjoining lot for $250.00, and paid $50.00 on account of the purchase price. Howard B. Patrick made a further payment of $25.00 on his lot on January 21st, 1905, and when Mr. Patrick, on February 3rd, 1906, made the final payment of $150.00 on his lot, he also paid the balance of $175.00 due on Howard B. Patrick's lot, giving the vendors his check on the Salisbury Building, Loan and Banking Association for $325.00. Howard B. Patrick testified that he borrowed the $175.00 from his father, and the record contains a receipt from his father, dated May 4th, 1909, for the principal and interest of said loan, amounting to $181.12.

In March, 1908, Mr. Patrick employed Henry D. Powell, a surveyor and justice of the peace, to survey the two lots, pointed out to him the lines of the lots and assisted him in making the survey. After the survey was made he asked Mr. Powell if he could prepare a deed and what his charge was, and when Mr. Powell told him that he charged $1.00 for writing a deed, he remarked that a lawyer would charge $5.00. He then told Mr. Powell that he wanted the deed for his lot made to his wife, Elizabeth A. Patrick, and the deed for the other lot made to Howard B. Patrick. He paid Mr. Powell for writing the deeds and for taking the acknowledgments, and Mr. Powell prepared the deeds, took them to Dr. Smith and, after witnessing the execution of the deeds by the grantors and taking their acknowledgments, he left them with Dr. Smith. The deeds were recorded on

the same day they were executed, and Howard B. Patrick, who was engaged in business in Salisbury, testified that his father attended to the matter without his knowledge and handed him his deed one night after he got home.

From January 6th, 1906, to the time of his death, Mr. Patrick had a bank account in the Salisbury Building, Loan and Banking Association, in which he from time to time made deposits and on which he checked, and he also held certificates of deposit of said association on which he received four per cent. interest. After the completion of his dwelling Mr. Patrick, in order to secure safe investments that would yield him a larger income than he could realize from his certificates of deposit from the bank, purchased at different times three other lots in Salisbury and erected small houses on them to rent. One of these houses was built as late as 1908 or 1909. In 1907 he served on the petit jury of the fall term of the Circuit Court for Wicomico County, attended Court every day during the session, which lasted fourteen days, and was on the panel in a will case the trial of which began on October 3rd and was not concluded until October 8th.

In all of the various transactions to which we have referred Mr. Patrick made his own contracts, saw that they were properly performed, took care of his means, and maintained a home for himself and family without, so far as the record shows, the assistance of any one, and not one of the parties with whom he dealt in the various transactions to which we have alluded noted anything in his conduct or manner that indicated that he was not at the time perfectly capable of attending to the particular business in which he was engaged.

Now the evidence relied on to show that in March, 1908, Mr. Patrick was not capable of making a valid deed or contract consists mainly of the testimony of the two plaintiffs and Dr. Dick. The plaintiffs testified that he was subject to attacks of epilepsy; that during these attacks he was unconscious and was liable to fall, and that for several days after-

wards he was physically and mentally weak, his memory was defective, and his conversation broken and disconnected, and that he would wander about the neighborhood of his home and they would not know where to find him; that from 1906 to the time of his death these attacks became more frequent; that he would sometimes have as many as three or four a day, and that in their opinion he was not capable of making a valid deed or contract in March, 1908. On cross-examination they hesitated to say that there were not times between the attacks when he was competent, and Mrs. Hearn said she did not think he was competent to make a valid deed or contract in March, 1908, "without somebody's help." Dr. Dick testified that the first time he attended Mr. Patrick was in 1900 when he had an epileptic attack at the polls in Salisbury; that he attended him "at intervals" from that time to the date of his death for epilepsy, and that some times he would go to see him every day and that sometimes he would not see him for several months. When asked if he thought Mr. Patrick was capable of making a valid deed or contract in March, 1908, he said that in his opinion "he was never able to do any kind of business," that he was what he called "a crazy man," and that he attended him in 1908 about as often as he did in other years from the time he was first taken. It does not appear from this evidence that the Doctor saw him in March, 1908, or that he had seen him at any time within several months prior to the execution of the deed, and the inference to be drawn from his testimony is that Mr. Patrick was not capable of attending to any kind of business at any time from 1900 to the date of his death. A number of other witnesses were called by the plaintiffs to testify that in their opinion he was not capable of attending to business or of making a valid deed or contract, but in most instances the opportunities of the witness to judge of his mental condition at the time the deed was executed, and the facts upon which he based his conclusion were not such as entitles his opinion, under the circumstances, to very great weight.

Opposed to this evidence adduced by the plaintiffs we have, in addition to the testimony of the officers of the bank, the contractor who erected one of the houses in 1908 or 1909, the surveyor and justice of the peace who prepared the deed in question, and a number of other witnesses produced by the defendants tending to show that Mr. Patrick was competent, the uncontroverted fact that he did attend to all of his business during the years mentioned, and that as the result of the careful and prudent management of his affairs, he left at his death, in addition to the several lots and houses mentioned, a personal estate, including a small life insurance, of between three and four thousand dollars. There is not a particle of evidence to show that the deed in question was the result of undue influence exercised upon him, or that he was imposed upon or taken advantage of in any of the various business transactions he had during the years referred to, and the fact that he gave his wife, with whom he had lived about twenty-six years, and who had reared and cared for his children, a home without attempting to control her disposition of it, does not, under the circumstances, justify the suspicion that he was impelled by improper influence, or warrant the inference that he was wanting in proper regard for his children. His brother-in-law, C. Dyson Humphreys, testified that in the fall of 1907, during the time that Mr. Patrick was serving as a juror, Mr. Patrick spoke of the Jones' will case, and said that one of the reasons he wanted to sell his farm was that he wanted the money so that he could make proper provision for his wife.

In the case of *Townshend* v. *Townshend,* 7 Gill, 10, the Court said: "The impression made upon the mind of the witness by the conduct, manner, bearing, conversation, appearance, and acts of the testator in various business transactions, for a long series of years, is not mere opinion, it is knowledge," and in the case of *Cain* v. *Warford,* 33 Md. 23, JUDGE BRENT said: "The weight of evidence is very clearly in favor of the mental capacity of Joseph Cain to contract. That he was weak and feeble in mind, there is no doubt, but

he is represented as attending to the ordinary affairs of life,
making his own contracts in the community where he lives,
and providing, in an humble manner it is true, for the sup-
port of a wife and children. In the absence of any proof
of fraud or deception practiced upon him in consequence of
his weak mind, we can not conclude that a contract with
him is void because of a want of mental capacity to make it."

We have not overlooked the fact that Howard B. Patrick
testified in chief that he purchased for his father the lot
Mr. Patrick bought from the Smiths, but on cross-examina-
tion he admitted that his father was present when the pur-
chase was made, and also admitted that he never had any-
thing to do with the purchase of the other lots which were
bought some years after the purchase of the Smith street lot.

In regard to the plaintiff's exceptions to the evidence, it
is only necessary to say that all of them, except the last three,
are to all of the evidence of the witnesses mentioned, and
that some of the testimony of each of these witnesses was
admissible as tending to contradict the evidence adduced by
the plaintiffs to show the mental condition of Mr. Patrick.
The last three exceptions relate to the opinion of the wit-
nesses referred to as to Mr. Patrick's capacity to make a
valid deed or contract, and even if we were to concede that
they were not competent to express an opinion, the exclusion
of the evidence would not alter our conclusion in the case.

Upon a careful consideration of all pertinent evidence in
the case we are unable to adopt the view of the learned Court
below, and must therefore reverse the decree from which the
appeal was taken.

> *Order reversed, with costs to the appellants*
> *and bill dismissed.*

---

Thomas, J., delivered the opinion of the Court overruling
the petition for a modification of the decree.

The appellees have filed a petition for a modification of
the decree of this Court upon the theory that as two of the

heirs at law of Mrs. Patrick answered the bill, admitting the facts alleged and consenting to the passage of a decree as prayed, the bill should not have been dismissed as to these defendants, but the case should have been remanded for a decree by the lower Court against them.

The suit was brought for the purpose of having the deed in question declared null and void on the ground that Mr. Patrick, at the time he gave the directions for its preparation and execution, was incapable of making a valid deed or contract, and for the appointment of a trustee to convey the property to the plaintiffs. The *jurisdiction* of the Court below was based upon the averment that the deed was invalid for the reasons stated, and the decision of this Court holding that it was not open to the objections urged against it deprived the lower Court of jurisdiction to decree the relief sought against any of the defendants. The defendants who consented to the passage of the decree can convey their interest to the plaintiffs, but the lower Court is without jurisdiction to require them to do so, or to appoint a trustee for that purpose. The prayer of the petition must therefore be denied.

*Petition dismissed.*