[S. F. No. 1939.    Department One.—March 13, 1900.]

In the Matter of the Estate of ANGELIA R. SCOTT, Deceased. EMERSON W. SCOTT, Appellant, v. C. M. GERRISH and FRANK GARCIA, Jr., Executors, et al., Respondents.

WILL—CONTEST OF PROBATE—INSANE DELUSIONS AGAINST HUSBAND—BURDEN OF PROOF—ABSENCE OF FACTS INDUCING BELIEF—PRESUMPTION OF SANITY.—Where the husband of the testatrix contested her will upon the alleged ground of insane delusions on her part that he was unfaithful to her, was attempting to poison her, and was conspiring with others to place her in an insane asylum, the burden was upon him to prove the existence of these delusions, and not only that they had no foundation in fact, but also that there was no evidence of any facts brought to her knowledge from which she might form a belief, however unreasonable and perverse it might be, in the truth of her charges. He must present evidence sufficient to overcome the presumption that she was sane when she made the will.

ID.—ABSENCE OF BELIEF—SUSPICION.—If there is evidence to show that the testatrix did not really believe in the truth of the charges made by her, or had a mere suspicion of them, whether resting upon evidence or not, which did not amount to an abiding conviction of the truth of the facts suspected, but was a mere doubt or mistrust of her husband, there was no insane delusion. A suspicion which rests upon evidence cannot be held to be a delusion.

ID.—NATURE OF INSANE DELUSION—IMAGINARY FACTS—ABSENCE OF EVIDENCE—IMMOVABLE BELIEF.—An insane delusion is the conception of a disordered mind which imagines facts to exist of which there is no evidence, the belief in the existence of which is adhered to against all evidence and argument to the contrary, and cannot be accounted for on any reasonable hypothesis.

ID.—IRRATIONAL INFERENCE FROM FACTS, NOT INSANE.—One cannot be said to act under an insane delusion, if there is any evidence, however slight or inconclusive, which might have a tendency to create the belief or a suspicion of the truth of the facts, or if the condition of mind results from an inference drawn from facts which are shown to exist, however irrational or unfounded such inference may be.

ID.—PERVERSE OPINIONS—UNREASONABLE PREJUDICES.—On questions of testamentary capacity, courts should be careful not to confound perverse opinions and unreasonable prejudices with mental alienation. Wills do not depend for their validity upon the testator's ability to reason logically, or upon his freedom from prejudice.

ID.—CONSTRUCTION OF FINDING AGAINST DELUSIONS.—A finding that the testatrix was not under any of the delusions with which she was charged by her husband is equivalent to a finding that all of the elements necessary to create an insane delusion did not exist in respect to either of them; and if there is evidence inconsistent with those elements in any respect, the finding must be sustained.

ID.—SUPPORT OF FINDING—PHYSICAL CONDITION AND CONDUCT OF WIFE—ACTIONS AND WORDS OF HUSBAND.—The court in making its finding was authorized to consider the physical condition, temperament, and habitual conduct of the wife, and her relations with her husband, and also his actions and words, as laying the foundation for her suspicions against him, and leading to excited and violent accusations, which were characteristic of her, in her physical condition, when irritated. The court was also authorized to consider the continued friendly relations between them, her consulting of him upon her business matters, and the provision in her will for him and for his children by a former marriage, and might reasonably conclude therefrom that she was not fully convinced of the truth of her charges; and its finding that there was no insane delusion is sufficiently supported.

ID.—EVIDENCE—CERTIFICATE OF EXAMINATION OF TESTATRIX BY EXPERTS—DISCRETION—CROSS-EXAMINATION—PROPONENT'S CASE.—A certificate of examination of the testatrix by experts upon insanity before making her last codicil may be allowed in the discretion of the court to be offered on cross-examination of one of the experts called as a witness for the contestant, instead of making the admission of the certificate a part of proponent's case.

ID.—LIMITATION OF CERTIFICATE AS EVIDENCE—WAIVER OF OBJECTION—APPEAL.—Where it was not urged in any manner in the court below that the certificate should be limited as evidence to the statement of the particular expert called as a witness, and could not include the unsworn statement of another expert, the objection is waived, and is not available upon appeal.

ID.—WISH OF TESTATRIX TO MAKE GIFT—INSTRUMENT NOT IN ISSUE—TESTAMENTARY INTENT NOT SHOWN.—An instrument signed by the testatrix subsequent to the last codicil to her will, expressing a wish to make a gift of a specified sum of money to a person named, for which no petition for probate was presented, is not in issue upon the contest of the will and codicils presented for probate. In the absence of proof of testamentary intention, such instrument cannot be held to constitute a will.

APPEAL from an order of the Superior Court of the City and County of San Francisco admitting a will to probate and from an order denying a new trial of a contest of the will. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

M. M. Estee, A. Everett Ball, and Charles A. Shurtleff, for Appellant.

The evidence establishes insane conduct and insane delusions of Mrs. Scott, amounting to monomania, and the fact that she might be otherwise of sound mind and memory cannot sustain a will in which the insane delusions were involved. (Elwell's Medical Jurisprudence, 435; *Duffield v. Morris,* 2 Harr. (Del.) 375; 1 Jarman on Wills, sec. 38; Mann on Medical Jurisprudence of Insanity, 58; Brown's Medical Jurisprudence of Insanity, 366; *Lathrop v. American Board etc.,* 67 Barb. 593; 5 Hun, 564; *Seamen's Friend Soc. v. Hopper,* 33 N. Y. 619, 624; *Dew v. Clarke,* 3 Add. Ecc. 79; *Mill's Appeal,* 44 Conn. 484; *Kimberly's Appeal,* 68 Conn. 428; 57 Am. St. Rep. 101; *Thomas v. Carter,* 170 Pa. St. 272, 279; 50 Am. St. Rep. 77; *Haines v. Hayden,* 95 Mich. 332, 354; 35 Am. St. Rep. 566; Redfield's American Cases on Wills, 258; *McElroy's Case,* 6 Watts & S. 451; *Stanton v. Wetherwax,* 16 Barb. 259; *Mullins v. Cottrell,* 41 Miss. 291; *Forman's Will,* 54 Barb. 274; *Commonwealth v. Rogers,* 7 Met. 500; 41 Am. Dec. 458; *Gass v. Gass,* 3 Humph. 278; *Tawney v. Long,* 76 Pa. St. 106, 111; *Banks v. Goodfellow,* L. R. 5, Q. B. 549; *Fraser v. Jennison,* 42 Mich. 231.) Findings were not waived, and the omission of the court to find upon the question of the will in favor of Wealthy Wormell entitles to a new trial. (*Ball v. Kehl,* 95 Cal. 606; *Adams v. Helbing,* 107 Cal. 298.) A petition for the probate of a will is not necessary to its probate. (*Estate of Howard,* 22 Cal. 395.) All parties were in court when this instrument was presented, in addition to the will and codicils, and the court should have passed upon it. The expression of the wish in the instrument by the testatrix shows that it is testamentary. (*Carle v. Underhill,* 3 Bradf. 104; *Mitchell v. Donohue,* 100 Cal. 205; 38 Am. St. Rep. 279; *Hunt v. Hunt,* 4 N. H. 434; 17 Am. Dec. 434; *Byers v. Hoppe,* 61 Md. 207; 48 Am. Rep. 89.)

Philip Galpin, and A. E. Bolton, for Executors, Respondents.

Belief based on evidence, however slight, or however illogically deduced, is not delusion. (*Matter of Will of White,* 121 N. Y. 414; *Clapp v. Fullerton,* 34 N. Y. 190; 90 Am. Dec. 681.) Un-

founded suspicions, or unjust prejudices, do not prove unsoundness of mind, or invalidate a will. (*In re Carpenter*, 94 Cal. 418; *Clapp v. Fullerton, supra; Coit v. Patchen*, 77 N. Y. 537, 538; *Trumbull v. Gibbons*, 22 N. J. L. 117; 51 Am. Dec. 253.) The instrument expressive of a wish to give five hundred dollars to Wealthy Wormell lacks testamentary intent, and is not a will. (*Clarke v. Ransom*, 50 Cal. 599.) The deceased was sound enough in mind to make her will intelligently, and this is sufficient to sustain it. (*Daniel v. Daniel*, 39 Pa. St. 192; *Horne v. Horne*, 9 Ired. 99; *Kinne v. Kinne*, 9 Conn. 102; 21 Am. Dec. 732; *Stevens v. Vancleve*, 4 Wash. C. C. 262.)

Houghton & Houghton, for Horatio Stebbins, Mortimer S. Chamberlain, and Rachael Johonnot, Respondents.

These attorneys argued elaborately upon objections to the record upon appeal, and to the jurisdiction of the appeal. On the merits, the case is one of conflicting evidence, and the findings cannot be disturbed. (Hayne on New Trial and Appeal, sec. 288; *Hayes v. Campbell*, 63 Cal. 143, 148, 149; *McNear v. Bourn*, 122 Cal. 621; *Chico Bridge Co. v. Sacramento Transp. Co.*, 123 Cal. 178; *Jackson v. Puget Sound Lumber Co.*, 123 Cal. 97; *Hite v. Hite*, 124 Cal. 389; 71 Am. St. Rep. 82; *Capelli v. Dondero*, 123 Cal. 324.) The attorney who drew the will, and the witnesses thereto, amply proved the competency of the testatrix to make the will, and were the best witnesses as to her condition at that time. (*In re Redfield*, 116 Cal. 637, 650-63; *Clark v. Ellis*, 9 Or. 128, 147; *Stevens v. Vancleve*, 4 Wash. C. C. 262; Chaplin on Wills, 92.) Perverse opinions, unreasonable prejudices or suspicions, and perverse conduct, do not prove mental alienation. (*Seamen's Friend Soc. v. Hopper*, 33 N. Y. 624; *Potter v. Jones*, 20 Or. 240; *Trumbull v. Gibbons*, 22 N. J. L. 117; 51 Am. Dec. 253; *Will of Cole*, 49 Wis. 179; *Will of White*, 121 N. Y. 412, 414; *Riggs v. American Tract Soc.*, 95 N. Y. 504; *Addington v. Wilson*, 5 Ind. 137; 61 Am. Dec. 81; *Lee v. Lee's Executor*, 4 McCord, 183; 17 Am. Dec. 722; *Lucas v. Parsons*, 24 Ga. 640; 71 Am. Dec. 147.)

HARRISON, J.—Angelia R. Scott died December 16, 1897, leaving a last will and testament with two codicils thereto,

which were filed for probate December 22d. Her husband filed a contest against their probate, and the issues made by this contest were tried by the court without a jury. Findings were made against the allegations of the contestant and in favor of the proponents of the will, and an order entered admitting the will to probate. The contestant moved for a new trial, which was denied, and from this order, as well as from the order admitting the will to probate, he has appealed. Various grounds of objection have been presented by the respondents to the right of the appellant to be heard upon his appeal, but, without passing upon the sufficiency of these objections, we are of the opinion that the action of the superior court should be affirmed.

The original will offered for probate was executed November 7, 1891. The first codicil thereto was made February 25, 1892, and the second codicil October 22, 1897. By their provisions as modified by the last codicil, the testatrix gave thirty-three fiftieths of her estate to certain of her own relatives, twelve-fiftieths to certain relatives of her former husband, two-fiftieths to Mr. Scott, one-fiftieth to his three children in equal shares, and one-fiftieth to each of two charitable organizations. The grounds of opposition which her husband filed are that she was of unsound mind at the time of the execution of the will and codicils, and that their execution was brought about by reason of the undue influence of certain designated relatives, and that at the time of their execution she was under certain insane delusions in reference to him. There does not appear to have been any evidence introduced at the trial in support of his claim that the testatrix acted under undue influence of others in the execution of the will or either of the codicils, nor has any argument in support of this claim been presented by him. The finding of the court that she was not of unsound mind at the times of their execution is fully sustained by evidence in the record, and, although there was testimony to the contrary, yet under well-settled rules, this finding cannot be reviewed.

The delusions of the testatrix which the appellant alleges were such as to render the will invalid, and in reference to which evidence was presented to the trial court, are that he was

unfaithful to her; that he was attempting to poison her; and that he was conspiring with others to place her in an insane asylum.

Section 1312 of the Code of Civil Procedure declares: "On the trial the contestant is plaintiff and the petitioner is defendant"; and under the provisions of section 1981 of the Code of Civil Procedure, the burden of proof was upon the contestant to establish the existence of these delusions, and it was incumbent upon him to present to the court evidence in their support which would overcome the presumption that the testatrix was sane at the time of making the will.

In ordinary language, a person is said to be under a delusion who entertains a false belief or opinion which he has been led to form by reason of some deception or fraud, but it is not every false or unfounded opinion which is in legal phraseology a delusion, nor is every delusion an insane delusion. If the belief or opinion has no basis in reason or probability, and is without any evidence in its support, but exists without any process of reasoning, or is the spontaneous offspring of a perverted imagination, and is adhered to against all evidence and argument, the delusion may be truly called insane; but if there is any evidence, however slight or inconclusive, which might have a tendency to create the belief, such belief is not a delusion. One cannot be said to act under an insane delusion if his condition of mind results from a belief or inference, however irrational or unfounded, drawn from facts which are shown to exist. "An insane delusion is not only one which is error, but one in favor of the truth of which there is no evidence, but the clearest evidence often to the contrary. It must be a delusion of such character that no evidence or argument will have the slightest effect to remove." (*Merrill v. Rolston*, 5 Redf. 252.) "It is only a delusion or conception which springs up spontaneously in the mind of a testator, and is not the result of extrinsic evidence of any kind that can be regarded as furnishing evidence that his mind is diseased or unsound; in other words, that he is subject to an insane delusion." (*Middleditch v. Williams*, 45 N. J. Eq. 734.) "Delusions are conceptions that originate spontaneously in the mind without evidence of any kind to support them, and can be accounted for on no rea-

sonable hypothesis.   The mind that is so disordered imagines something to exist, or imputes the existence of an offense which no rational person would believe to exist or to have been committed without some kind of evidence to support it." (*Potter v. Jones*, 20 Or. 249.  See, also, *Will of Cole*, 49 Wis. 179; *Robinson v. Adams*, 62 Me. 369; *Boardman v. Woodman*, 47 N. H. 139; *Kimberly's Appeal*, 68 Conn. 428; *Seamen's Friend Soc. v. Hopper*, 33 N. Y. 619; *Clapp v. Fullerton*, 34 N. Y. 190; *Will of White*, 121 N. Y. 406; *Smith v. Smith*, 48 N. J. Eq. 566; *Estate of Carpenter*, 94 Cal. 406.)

Mrs. Scott was sixty-four years of age at the time of her death.   She had been the wife of S. P. Collins, who died in 1885, leaving to her an estate amounting to about three hundred thousand dollars.   She was without children, and remained a widow until March 6, 1889, when she married Mr. Scott.   He was at that time a widower some years younger than she, with three children, one of whom he had placed in the east, and the other two he took with him to the house of his wife.   It does not appear that at that time he was engaged in any business, or possessed of any considerable estate, and he soon assumed the management of a portion of the business of his wife.   She was a woman of excitable temper and easily irritated, and, when excited, was violent in both language and action.   She was also highly suspicious of nearly every person with whom she had any relation—feared they were taking some advantage of her, or were seeking to do her some injury.   She was a constant sufferer from dyspepsia and other diseases of her stomach and digestive organs, was unable to eat any food except of the simplest nature, would frequently complain of distress from what she had eaten, and finally died of ulceration of the stomach. She was constantly troubled with constipation, had at no time a natural passage of her bowels, but was at all times compelled to make use of enemas.   These ailments tended to aggravate her irritableness, and caused her to display her violent temper and to give expression to her suspicions, and to make severe accusations against those with whom she was in friendly relation. She seemed to have a constant fear that she was liable to be poisoned, and charged nearly everyone about her with seeking to poison her.   This charge was frequently made while she was

a widow, and after her marriage with Mr. Scott she was wont to make the same charge, not only against him, but also against other individuals, both generally and specifically, and would often say that "somebody" was trying to poison her. On one occasion she sent a sample of malted milk and a jar of faeces to Dr. Spencer for chemical analysis, and was informed by him that it showed no presence of poison, but that the faeces contained many red blood-cells, indicating that some portion of her alimentary canal was slightly bleeding. She was, moreover, of an exceedingly jealous disposition, and entertained a strong suspicion that her husband was unfaithful to her, just as she had entertained a similar suspicion of her former husband. She frequently accused him of undue intimacy with other women, and stated to others, as well as to him, that he was unfaithful to her. She also expressed dissatisfaction with his management of her property, and even accused him of appropriating some of it to his own use. She had controversy with him about the disposition of her estate and the mode in which her will should be made, and he had said to her that he could break any will she could make, because he could prove that she was insane. One witness testified that Mr. Scott told him that she was crazy or insane; that she gave him very little money; was very jealous; that she could not make a will but he could break it; that if she did not make a will to suit him he should break it; that he was going to hold on, and that she would die very soon; and he also testified that he repeated this to Mrs. Scott. She had evidently been previously informed that Scott had made these or similar statements, as she had repeated them to others. She also stated to many persons that her husband was trying to put her into an insane asylum. Prior to the making of her last codicil, under the advice of certain friends, she caused an examination of her mental condition to be made by some expert alienists, for the purpose, it may be assumed, of defeating what she believed or suspected might be the intention of her husband to contest the validity of her will.

There is no evidence in the record from which the court could find that the contestant was ever unfaithful to his wife or that he ever made any attempt or had any thought to poison her, or to cause her to be placed in an insane asylum. The court how-

ever was not authorized to hold that she was under an insane delusion in reference to these propositions unless it was satisfied, from the evidence before it, not only that these charges against him were without any foundation in fact, but also that there was no evidence of any facts brought to her knowledge from which she might form a belief, however irrational or inconclusive it might be, in the existence of the acts or purposes with which she charged him, and, in addition thereto, that she did in fact believe that he was guilty thereof. In *Seamen's Friend Soc. v. Hopper, supra,* upon a similar proposition the court said: "If he did not really believe what he alleged to be their criminal conduct and intentions—if he uttered the injurious imputations by way of personal abuse in order to gratify a depraved and malicious disposition, or for the purpose of defaming or otherwise injuring them in the estimation of their acquaintances in the community, any and all of these dispositions and motives, though most unworthy and reprehensible, would fall short of that degree of mental perversion which would enable the courts to pronounce him *non compos mentis* and incapable of disposing of his property by will. On questions of testamentary capacity courts should be careful not to confound perverse opinions and unreasonable prejudices with mental alienation." (See, also, *Smith v. Smith, supra.*)

The finding that the testatrix was not under any delusion upon these subjects is equivalent to a finding that all of the elements necessary to create a delusion in respect to either of them did not exist. If the evidence before the court was such as to authorize it to find that she did not in reality believe in the truth of the statements made by her, or that she made them in consequence of evidence of facts in reference thereto that had been brought to her knowledge, its finding must be sustained. The fact of her making the accusations was not conclusive upon the point, as they may have been made with perverse will, or in the heat of passion, or by reason of some unfounded belief, or some feeling of indignation or resentment. The court was required to determine whether, upon all the evidence before it, there was established such a fixed belief on her part in the existence of the truth of these charges as to constitute delusion. For this purpose it was proper to consider her

nature and temperament, the circumstances under which the statements were made, the habits of her life and association with others, and also her conduct toward her husband, and the nature of her intercourse with him during the period within which they were made.

If the contest had been tried before a jury, the court would not have been authorized to direct a verdict in favor of the contestant merely upon the testimony that she had made these accusations or charges, and that they were without foundation in fact, since the weight and credit to be given to this testimony for the purpose of determining whether the statements were the offspring of a delusion, or were a mere false accusation, could be determined only by the jury. (*Brooke v. Townshend,* 7 Gill, 32.) Any attempt by the court to control the jury by instruction, or even by suggestion as to the process of reasoning by which they should determine the issue before them, or in reference to the weight or credibility to be given to the evidence, would be an invasion of their province (*Estate of Carpenter, supra*); and, although there was no jury in the present case, the action of the court in determining questions of fact is attended with the same incidents and presumptions as that of a jury, and the weight and credibility given by it to the evidence is entitled to the same consideration as if passed upon by a jury under proper instructions. We cannot, as an appellate court, determine that the trial court did not sufficiently consider the testimony of these witnesses, or give proper weight thereto; nor can we substitute our judgment for that of the trial court as to the conclusion which should have been reached thereon. (See *Wallace v. Sisson,* 114 Cal. 42.)

There was evidence before the court which would have justified it in finding that the testatrix did not in reality believe in the truth of the statements, or that they were utterances for which she had some ground for belief, or at least a suspicion of their truth. A suspicion which rests upon evidence cannot be held to be a delusion. A suspicion which has no evidence to support it is only an unsettled condition of the mind indicating doubt or mistrust. It does not constitute a delusion unless it shall develop into a fixed conviction of the existence of the fact suspected. In *Clapp v. Fullerton, supra,* the testator was

charged with a delusion regarding the legitimacy of his daughter, but the court held that it was unsustained for the reason that "it is evident that he did not arrive at a clear and settled conviction that he had been wronged in the conjugal relation; but he was brought to a condition of doubt, suspense and uncertainty." In *Will of White, supra,* the court said: "If there are facts, however insufficient they may in reality be, from which a prejudiced or a narrow or a bigoted mind might derive a particular idea or belief, it cannot be said that the mind is diseased in that respect. The belief may be illogical or preposterous, but it is not, therefore, evidence of insanity in the person. Persons do not always reason logically or correctly from facts, and that may be because of their prejudices, or of the perversity or peculiar construction of their minds. Wills, however, do not depend for their validity upon the testator's ability to reason logically, or upon his freedom from prejudice."

It was but natural when her husband told her that he could prove that she was insane, and when she was informed by others that he had made similar declarations to them, that she should at least have a suspicion, if not a fear, that he would cause her to be treated as other insane people are treated, and that under her suspicious and excitable nature she should declare to others that he was trying to put her into an insane asylum. But it cannot be said that there was an entire want of foundation for her making these statements, or that they were the offspring of a perverted imagination. Neither were her charges of unfaithfulness entirely without reasons for a suspicion of its existence. Her husband had ceased to have sexual relation with her shortly after their marriage, and they afterward occupied different apartments in the house. She told one of the witnesses that she had seen her husband in the sitting-room with his arm around one of the female servants. It was also shown that he was wont to visit one of her nieces in the daytime, in the absence of her husband, once a week and sometimes oftener. These facts were not denied by the contestant. Mrs. Scott was informed of these visits by one who, by her own admission, was malevolently inclined toward the niece, and, although the character and position of the niece were such as to forbid any inference of impropriety in these visits, yet to a jealous mind trifles

light as air are sufficient to create a confirmation of the truth of a suspicion. In *Potter v. Jones, supra,* where a similar charge was made by the testator against his wife, and where the court said that "her known character for chastity, her everyday walk and life, render it impossible that the interviews could have occurred for the foul purposes which he imputes, or otherwise than accidentally and without concert or evil design in thought or deed," it also said: "But these facts, however falsely or unjustly he may have reasoned from them, or however absurd his conclusions as applied to the wife and contestant impugned by them, nevertheless furnished the evidence which inspired his suspicions and the ground upon which his belief was founded," and held that they were sufficient to defeat the charge of a delusion.

Neither can it be said that she was actually convinced that he had tried or desired to poison her. That she labored under a fear that she might be poisoned may be conceded. The nature of her ailments and her physical condition, and the suffering experienced by her from her food, naturally contributed to this fear; but it does not appear that she felt this fear from her husband more than from others by whom she was surrounded, or that she made any more specific accusation against him than she did against others. She made a direct charge of this nature against Mrs. Swale before she was married to Mr. Scott, but with her, as with him, there was nothing to indicate that it was more than an accusation made by reason of a suspicion, or caused by the nature of her physical condition. If she was possessed of the idea that Scott deemed her insane, the thought that he might poison her was not entirely the fruit of a perverted imagination. Of this charge, as well as of the others, it may be said that her conduct toward her husband, and their relations with each other, furnish some evidence that she was not actually convinced of the truth of her charges against him. During all these times she was seeking some evidence of the fact of his infidelity, urging others to prove that it existed, and employing detectives to follow him and ascertain if her suspicions were justified. She continued to occupy the same house with him, and to sit at the same table, and there does not appear to have been any change in their conduct or intercourse with

reference to each other. She was accustomed to drive with him in her carriage, and as late as the month of July previous to her death took a pleasure drive with him to the Cliff House. Mr. Scott testified that down to the time of her death she always consulted with him about her business affairs, and that he did whatever she wished to have him do, and tried to help and assist her, and that often when she had been to her attorney's office, she would upon her return tell him the subjects and nature of their conversation. The provision made for him in her will could also be considered by the court in determining whether her conduct so varied from her accusations as to lead to the conclusion that she did not actually believe them to be true. By the will, as originally made in 1891, she gave two-fiftieths of her estate to him and when in October, 1897, after the making of these accusations against him, and when, if she was firmly convinced of their truth, it would not have been natural for her to make a provision for him out of her estate, she, by her codicil of that date, not only expressly reaffirmed her former devise of this two-fiftieths of her estate to him, but in addition thereto she gave one-fiftieth of her estate to his children by his former wife. It must be held that the evidence sufficiently authorized the superior court to find that Mrs. Scott was not fully convinced of the truth of the charges made by her against her husband, and, consequently, was not under any delusion in reference thereto.

As hereinbefore stated, before making her last codicil Mrs. Scott caused an examination of herself to be made by certain experts in insanity, and at the trial Dr. Mays, who was one of these experts, was called as a witness by the contestant, and upon his cross-examination the certificate which had been given to Mrs. Scott by these experts was shown to him and identified, and was thereupon offered in evidence by the proponents of the will. The contestant objected thereto on the ground that it was irrelevant and a part of the proponent's case. The objection was overruled, and this ruling is now assigned as error. That the certificate was relevant appears upon its face, and whether it should be admitted at that time, or when the case of the proponent was reached, was in the discretion of the court. It is urged, however, that by its admission the unsworn state-

ment of Dr. Gardner, who had signed it, was brought before the court without any opportunity for his cross-examination. This objection, however, was not made when it was offered in evidence, and, consequently, is not available to the appellant. The certificate was signed by Dr. Mays and was admissible upon his cross-examination as a statement made by him at another time. If the contestant had wished to have its effect limited to the statement of the witness, the court upon his request would have done so. Several other rulings of the court in reference to the admission of testimony are objected to, but none are of such a character as to justify extended comment. We do not find any error in any of them which could have had any effect upon the decision of the issues before the court.

During the trial Mrs. Wormell was called as a witness by the proponents, and while under examination stated that she was a beneficiary under the following instrument:

"December 10, 1897.

"I wish to make Wealthy Wormell a gift of $500.

"A. R. SCOTT.

"Witness: Dr. J. N. Eckel."

The witness testified that she saw Mrs. Scott write and sign that paper, and saw Dr. Eckel sign it. "She said she wished to make me a gift—that I had been kind to her. I was at her bedside—the night that she was taken to bed. She told me what she was going to write. Dr. Eckel was present. She said that I had been kind to her, and she wanted to make me a present. That was all."

The appellant contends that the court erred in failing to find whether this was a will. Whether this is a part of the testamentary disposition by Mrs. Scott of her estate was not one of the issues before the court for trial. The amended contest upon the probate of the will was filed January 22, 1898, and the answers thereto filed in the February following. Upon that contest the execution or relevancy of this instrument was not made an issue. The trial of the contest began March 22d, and this instrument was not produced or filed until March 30th. No notice of its filing was given nor was any petition for its probate ever presented to the court. There is no evidence in the record that the writing was made with any testamentary in-

tent, and its terms are more compatible with an intention to · make a gift *inter vivos* than a testamentary disposition. In the absence of a showing of testamentary intent, it cannot be held to constitute a will. (*Clark v. Ransom*, 50 Cal. 595.)

The order admitting the will to probate and the order denying a new trial are affirmed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.