[S. F. No. 8368. Department Two.—March 5, 1918.]

In the Matter of the Estate of ANDREW ALLEN, Deceased. JANE A. ALLEN, Appellant, v. JOHN ELLIOTT, Respondent.

WILL—CONTEST OF WILL—MENTAL CAPACITY—BURDEN OF PROOF.—On the contest of a will on the ground of insane delusions amounting to unsoundness of mind, the burden is on the contestant to prove the existence of the alleged delusions.

ID.—INSANE DELUSIONS—BURDEN OF PROOF, HOW SUSTAINED.—To prove the existence of insane delusions on the contest of a will, the contestant must not only show that the delusions had no foundation in fact, but also that there was no evidence, however slight or inconclusive, of any fact upon which the belief could be founded.

ID.—MENTAL ALIENATION — PERVERSE OPINIONS AND UNREASONABLE PREJUDICES.—In questions of testamentary capacity, courts should be careful not to confound perverse opinions and unreasonable prejudices with mental alienation.

ID.—INSANE DELUSIONS OF TESTATOR RESPECTING HIS CHILDREN—QUESTIONS TO BE CONSIDERED BY JURY.—Where, on the contest of a will, it was claimed by the contestant that the testator had entertained insane delusions respecting his daughters (the contestant and her sister), their moral character, and their conduct toward him as well as the extent of the provision he had already made for them by gifts of money and property, and their financial circumstances, it was proper for the jury to consider the testator's nature and temperament, his advanced age, the circumstances under which statements attributed to him were made, and the general conduct of his daughters toward him.

ID.—EVIDENCE.—Where the belief entertained by the testator, in such case, that his daughters had large sums of money loaned out and in bank was the chief delusion alleged to have contributed to the making of the will, evidence which tended to establish such fact was competent to show that such belief was not a delusion, but founded in truth, and also as tending to show that the testator had in fact, as declared by him, made ample provision for his daughters.

ID.—OPINION EVIDENCE—EVIDENCE AS TO TESTATOR'S APPEARANCE—OBJECTION TO FORM OF QUESTION—UNPREJUDICIAL ERROR.—Where, on a witness for contestant being asked what, if anything, he had observed in the testator's appearance, conversation, or any other thing pertaining to him, before making of the will, which would cause or induce him to believe that the testator was not entirely rational, the court sustained an objection to the form of the ques-

tion, saying that if the witness was called as an intimate acquaintance for the purpose of testifying as to the testator's sanity, he must first state whether he believed the testator to have been of unsound mind, as provided in subdivision 10 of section 1870 of the Code of Civil Procedure, which provides that upon a trial, evidence may be given of "the opinion of an intimate acquaintance respecting the mental sanity of a person, the reason for the opinion being given," and counsel for contestant, refusing to comply with the court's suggestion, restated the question in substantially the same form, and a like objection was sustained, it was the duty of counsel to reframe the question in compliance with the suggestion of the court, or to have clearly indicated to the court that the evidence sought was as to acts and conduct, and to establish the existence of insane delusions, and not having done so, he was in no position to complain.

ID.—DECLARATIONS OF TESTATOR'S INTENTIONS IN CONFORMITY WITH WILL.—Evidence for the proponent of the testator's declarations prior to the making of the will that he intended to leave his property to beneficiaries named therein was properly admissible.

ID.—EVIDENCE OF TESTATOR'S OPPOSITION TO A DAUGHTER'S MARRIAGE.—Evidence for the proponent of the will in such case that the testator was opposed to the marriage of one of his daughters, a sister of the contestant, was properly admitted although the marriage occurred after the making of the will, the testator having left his property to nephews instead of to his daughters, who were his next of kin.

ID.—CROSS-EXAMINATION—IMPEACHING WITNESS BY PROOF OF INCONSISTENT STATEMENTS.—Where, in such case, the contestant had testified that her father had been insane since 1897, and her sister had testified that he was always insane, the trial court properly admitted, on cross-examination, as impeaching testimony, a verified answer of the contestant in a suit brought by the father against the daughters to set aside a conveyance made to them by him in which answer the contestant alleged that in 1909, at the time of the execution of the deed, her father was mentally sound, and a verified answer by the sister in the same suit adopting the former answer "as fully as if she had originally joined therein."

ID.—EVIDENCE—TESTAMENTARY CAPACITY—TESTATOR'S ACTS AND CONDUCT.—In a will contest involving testamentary capacity of the testator, both parties are properly permitted great latitude as to the conduct, acts, and declarations of the testator, both before and after executing the will.

ID.—PRESUMPTION AS TO INSTRUCTIONS.—While such evidence is important only as it bears upon the condition of testator's mind at the very time of the execution of the will, it must be assumed that the jury was properly instructed as to the application of the facts proved, where the contrary is not shown.

Id.—Rebuttal Evidence—Exclusion not Erroneous.—Where some of the proponent's witnesses, in testifying to the testator's sanity, referred to certain specific acts on his part, subsequent to the making of the will, in connection with a building erected by him on a lot owned by him in San Francisco, on which he executed a mortgage for part of the money used in the construction, it was not error to exclude testimony offered as rebuttal, by which the contestant sought to show by the architect who drew up the plans the extent to which the testator looked after the construction, since the evidence was not in rebuttal of any facts testified to by the proponent's witnesses.

Id.—Will as Result of Delusion—Burden of Proof.—To set aside a will on the ground of insane delusions on the part of a testator, the contestant must establish three things; namely, the existence of the beliefs, the fact that there was no evidence, however slight or inconclusive, which could have produced the beliefs, and that the will made was the result thereof.

APPEAL from a judgment of the Superior Court of Alameda County. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

E. K. Taylor, and Peter J. Crosby, for Appellant.

McNair & Stoker, Elliott Johnson, and R. W. Palmer, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Andrew Allen died January 20, 1916, at the age of seventy-nine years, leaving a duly executed holographic will dated March 29, 1911, which John Elliott, therein named as executor, filed, with his petition to have the same probated.

By the terms of the will deceased left his estate, consisting of real estate and improvements worth approximately twenty-five thousand dollars, and subject to a mortgage of eleven thousand dollars, to two nephews. His next of kin consisted of two daughters, Hannah J. Pearson and Jane A. Allen, for whom, he stated in the will, he had amply provided by deeds of gift and money.

Jane A. Allen filed a contest of the will based upon the alleged ground that at the time of its execution by her father he was of unsound mind and without capacity to make a will. The issue as to this question was tried by a jury, which re-

turned a verdict that deceased was of sound mind when he
executed the will, and in accordance with such verdict judg-
ment was rendered against the contestant and an order made
admitting the will to probate. The contestant appeals from
this decree and order.

Appellant, while not claiming that deceased was insane in
the broad sense of the term, insists that he was a victim of
insane delusions, in the absence of which he would not have
made the will whereby nothing was left to his daughters.

In her brief appellant specifies a number of alleged delu-
sions entertained by her father, among which was the fact
that in his will and also in declarations made by him he stated
that he had amply provided for his daughters by gifts of
property and money; that deceased believed that his daugh-
ters were conspiring against him; that there would be no one
to care for him; that they were guilty of immoral acts; that
he drew seven thousand dollars from the bank and went to
Ireland on a visit of ten days and on his return stated that
he came back because it rained; that he was suspicious of his
daughters and others; that he used abusive language toward
them and magnified innocent trifles into grave offenses.

The burden was on contestant to prove the existence of the
alleged delusions, and to do this it not only devolved upon
her to show that they had no foundation in fact, but also
that there was no evidence, however slight or inconclusive,
of any fact upon which the belief could be founded. The
alleged conduct and opinions of deceased in the instant case
are very similar to the grounds upon which the husband con-
tested the will of his wife in the case of *Estate of Scott,* 128
Cal. 57, [60 Pac. 527], wherein the question here involved
was fully considered, and the court in discussing the suffi-
ciency of the evidence to establish the existence of an insane
delusion, among other things, said: "The court, however, was
not authorized to hold that she [the testatrix] was under an
insane delusion in reference to these propositions [delusions]
unless it was satisfied, from the evidence before it, not only
that these charges against him were without any foundation
in fact, but also that there was no evidence of any facts
brought to her knowledge from which she might form a be-
lief, however irrational or inconclusive it might be, in the
existence of the acts or purposes with which she charged him,
and, in addition thereto, that she did in fact believe that he

was guilty thereof.'' In *American Seamen's Friend Soc.* v. *Hopper*, 33 N. Y. 619, as touching a similar question, it was said: ''On questions of testamentary capacity, courts should be careful not to confound perverse opinions and unreasonable prejudices with mental alienation.'' To like effect is *Smith* v. *Smith*, 48 N. J. Eq. 566, [25 Atl. 11]. In the determination of the question it was proper for the jury to consider Allen's nature and temperament, his advanced age, the circumstances under which the statements were made, his habits of life, and the general conduct of his daughters toward him. The typewritten transcript of the testimony touching the acts and conduct of the deceased and upon which the claim of appellant is made covers some 750 pages. No purpose could be subserved by an extended reference to it. Briefly stated, the evidence tends to prove that deceased, notwithstanding his advanced age, was strong and robust, both mentally and physically, possessed of a dominating nature, his anger easily aroused, and at times violent in language and severe in manner toward his daughters, whom, though possessed of considerable property, upward of twenty thousand dollars, of which their father had given them, not only refused to advise and confide in him as he requested them to do, but pursued a course of conduct well calculated to arouse his suspicion and create as to them a feeling of distrust as to their loyalty, and thus in his mind afford just ground for the belief that they were ungrateful and without affection for him. Feeling that his childless daughters, well advanced in life, were amply provided for, he not unnaturally, in view of all the circumstances, turned to the sons of a deceased brother, whom he had a few months before the making of the will visited in Ireland, and upon these bestowed the remainder of his property. We cannot say that the verdict is not justified by the evidence. On the contrary, had the respondent offered no evidence, the jury upon that alone presented by contestant might very properly have deemed it insufficient proof that testator was the victim of insane delusions when he made the will.

Rulings of the court in admitting evidence as to the wealth of contestant are assigned as error. The belief entertained by Allen that his daughters had large sums of money loaned out and in bank was the chief delusion alleged to have contributed to the making of the will; hence evidence which

tended to establish such fact was clearly competent, in that its purpose was to show that such belief was not a delusion but founded in truth. Moreover, such evidence was properly admissible as tending to show that he had in fact, as declared by him, made ample provision for his daughters in giving them the home ranch worth twenty thousand dollars. Their needs, depending upon what they possessed, would be the measure of what constituted ample provision.

Mr. Armstrong was called as a witness for contestant, and upon qualifying as an intimate acquaintance of deceased during a period of forty-five years, was asked: "What, if any facts, did you observe in the conduct, appearance, conversation, or any other thing pertaining to Mr. Allen, during two years prior to the making of the will which would cause you to believe or infer that he was not entirely rational?" to which an objection was sustained, the court saying that if the witness was called as an intimate acquaintance for the purpose of testifying as to the testator's sanity he must first, as provided in subdivision 10 of section 1870 of the Code of Civil Procedure, state whether he believed the testator to have been of unsound mind. Notwithstanding this suggestion, counsel for contestant refused to comply therewith, and again asked the following: "I will ask you . . . prior to March, 1911, what, if anything, did you observe in Mr. Allen with reference to his appearance, or rather observe in his appearance, conversation, or acts, with reference to his being rational or irrational?" to which a like objection was sustained. The objection urged was to the form of the question, and the court clearly pointed out that counsel for contestant should, as provided by statute, first ascertain from the witness whether or not in his opinion Allen was of sound or unsound mind. Nevertheless, counsel refused to change the form of the questions which were objectionable in that the inquiry was not directed to the mental condition of testator but to acts with reference to whether he was rational or irrational. Since the court called counsel's attention to the fact that his questions were objectionable in form, it was his duty, if an opinion was desired, to reframe the questions in compliance with the suggestion made, or, if not, then have clearly indicated to the court that the evidence sought was as to acts and conduct. Not having done so he is in no position to complain of the alleged error, which, since it was not made

to appear that it was sought thereby to establish the existence of insane delusions, cannot be deemed prejudicial.

Objection urged to the ruling of the court in admitting evidence of testator's declarations made prior to the execution of the will that he intended to leave the property to his nephews is without merit (40 Cyc., p. 1026); and likewise without merit is the objection that the court committed error in permitting respondent to introduce evidence showing that the testator was opposed to Hannah's marriage to Pearson, which occurred after the execution of the will.

At the trial contestant testified that her father had been insane since 1897. Thereupon, on cross-examination, it was made to appear that Allen had brought an action against his daughters to set aside the deed whereby he conveyed to them certain real estate, and that in said action contestant had filed a verified answer to the complaint, therein alleging that at the time of the execution of said deed, to wit, in March, 1909, her father was sane and sound mentally. We are unable to perceive any ground upon which to base the claim that the admission of such evidence was improper. If, for no other reason, it was clearly competent for the purpose of impeaching the witness. Her sister Hannah was also a party to the action to set aside the deed, and in connection with the answer of contestant so offered in evidence, proponent likewise offered the answer of Hannah A. Pearson, who, on the trial of the contest, testified that her father had always been insane, but in the answer referred to, she adopted the answer of her sister, and confirmed the same "as fully as if she had originally joined therein." We cannot assume, as appellant insists, that Hannah in so adopting the answer of contestant was unacquainted with its contents.

Under the rulings of the court both parties to the controversy were permitted great latitude as to the conduct, acts, and declarations of the testator, both before and after executing the will. In these rulings there was no error, since "in will contests involving the question of testamentary capacity the evidence is permitted to take a wide range covering a long space of time in each direction" (40 Cyc., p. 1023; *Estate of Baker*, 176 Cal. 430, [168 Pac. 881]), and while such evidence is important only as it bears upon the condition of testator's mind at the very time of the execution of the will (*Estate of Wilson*, 117 Cal. 262, [49 Pac. 172, 711]),

we must assume, since the contrary is not shown, that the jury was properly instructed as to the application of the facts proved.

We find no merit in appellant's contention that the court erred in denying her offer of rebuttal evidence. It appears that subsequent to the making of the will Allen caused to be erected upon a lot on O'Farrell Street, in San Francisco, an apartment house costing some twenty-five thousand dollars, executing a mortgage thereon for part of the money necessary to construct the building. Some of the witnesses for proponent in testifying to Allen's sanity referred to specific acts in connection with the erection of this building. It was sought by contestant to show by the architect who drew the plans for the building the extent to which Allen looked after its construction, and the court very properly held that the evidence offered was not in rebuttal of any facts testified to by proponent's witnesses.

As stated, it devolved upon contestant to establish not only the existence of the beliefs which it is alleged Allen entertained, but prove that there was no evidence, slight and inconclusive though it might be, which could have produced the belief, and furthermore, if found that he was the victim of such alleged delusions, that the will made was the result thereof.

The judgment and order are affirmed.

Melvin, J., concurred.

WILBUR, J., Concurring.—I concur in the foregoing opinion. With reference to what is said concerning an insane delusion I concur because of the fact that the question as to what constitutes an insane delusion has heretofore been treated by this court as a question of law, and the court has defined, as a matter of law, what constitutes an insane delusion. In this, I think, the court has been in error. An insane delusion is one that is the product of a disordered mind produced because of the disorder. In other words, it is a symptom of a condition of mental disease. The question of whether or not a person is suffering from mental disease is a question of fact to be determined in the light of increasing medical knowledge. To say that a person is not suffering from an insane delusion because his conduct in ref-

erence thereto does not measure up to a legal standard is, in my opinion, as fallacious as it would be to say that, as a matter of law, a man does not have syphilis if he does not have the symptoms which were recognized as indicia of the disease before the discovery of the Wassermann test, which, modern research has disclosed, practically demonstrates the existence or nonexistence of syphilis. Insanity is one of the least understood of the ailments which afflict humanity. It is a fertile field for investigation, and happily is receiving that investigation at this time. If the legal definition of an insane delusion can be upheld at all on principle, it is because of the fact that the courts regard other forms of insane delusions, or of mental disease, as too difficult of proof as a basis for decisions by courts and juries. In that view, and in that view only, do I think that a legal definition of an insane delusion can be upheld on principle, and even in that case we ought not to close the door to such developments of modern research as may be able to make more certain proof of insanity. For illustration, the evidence in this case discloses that the decedent frequently spoke of his daughters as immoral. It is conceded that they were chaste and virtuous. It seems to me that in determining whether or not this should be regarded as the product of a diseased mind, or the outbursts of an unreasonable, eccentric, and angry man, there should be a wider latitude than that given by the accepted definition of an insane delusion. (*Estate of Scott,* 128 Cal. 57, [60 Pac. 527].) Doctor Ernest Dozier, who qualified as an expert in this case by testifying that he was doing special scientific investigation in human mental diseases at the Napa State Hospital, and had and continued to have for two years important medical supervision of a large number of insane persons, testified that the deceased was suffering from general paresis, was mentally unsound, and "harbored what seemed to me unsystematized delusions of persecution by all persons." "An unsystematized delusion is one that is composed of elements that are more or less fleeting and changeable and which *do not cohere so as to constitute a definite opinion in the patient's mind."* (1 Wharton & Stille's Medical Jurisprudence, sec. 400.) Some of the symptoms of paresis are thus stated by the foregoing authority: "General paresis often begins insidiously and among its earliest symptoms are perversions of the moral faculties. These lead to all sorts

of lapses, some trivial, but some quite otherwise. At first there is a change of character and disposition. The patient may have spells of despondency, then elation. He does odd and unusual things. He is . . . extravagant with money. . . . His morals suffer. . . . He may be restless and irregular in his habits . . . In some cases the patients start off aimlessly on a journey, without enough money. . . . The mental faculties are variously impaired. The judgment is weakened, the common sense lost, the logical processes curiously at fault. The patient has queer and absurd impulses and propensities; he becomes boastful, indifferent to appearances. . . . The emotions, or affections, are impaired, and the patient loses his normal fondness and care for his wife and children. A close observer may sometimes detect the beginning of delusions, such as mark especially the second stage. Occasionally, in the very early stage, he is conscious of feeling ill; he recognizes something is going wrong with him.'' (Sec. 890, Id.) The decisions in this state seem only to recognize the systematized delusions. (Sec. 400, Id.; *Estate of Scott, supra.*) "It is characteristic of monomania or paranoia, as distinct from most other forms of insanity, that the delusions are systematized. The one other form of insanity in which this feature is seen to anything like the same extent is melancholia; but melancholia is distinguished from monomania by the emotional depression. . . . '' (1 Wharton & Stille's Medical Jurisprudence, sec. 1028.) "Persecutory delusions may occur in several varieties of insanity.'' (Id., sec. 1026.)

Courts no doubt have been driven to the rigid rule above mentioned by the proneness of juries to attempt to make wills for decedents in accordance with their own ideas of what is just and proper, seizing upon incidents of eccentricity as a basis for such decisions. But where the question as to whether or not a person is insane arises on a trial for insanity in proceedings for commitment to an asylum, experience has shown that inexperienced jurors fly to the other extreme. In this case we have evidence which would have justified a finding of the jury either for or against the validity of the will.

For the reasons in the main opinion and upon all points of law discussed therein, and for the reasons hereinbefore given in addition thereto, I concur.