[Civ. No. 6941. First Appellate District, Division Two.—August 5, 1929.]

In the Matter of the Estate of CECELIA M. STRUVE, Deceased. EDGAR STRUVE, Appellant, v. ELMER H. STRUVE, Respondent.

C. F. Lacey and Scott & Pioda for Appellant.

Wyckoff & Gardner for Respondent.

NOURSE, J.—This is a contest of an objection to the admission to probate of the will of Cecilia M. Struve, deceased. The cause was tried before the court sitting with a jury and resulted in a verdict in favor of the proponent of the will. The contestant has appealed on a typewritten transcript.

The contest was instituted by Edgar Struve, a son of the deceased. The grounds of the contest were unsoundness of mind and the exercise of undue influence by Elmer H. Struve, a grandson of the testatrix and the chief beneficiary

under her will. The jury in answer to special issues submitted to it rendered special verdicts finding the deceased was of sound and disposing mind at the time of the signing of the will and that the will was not procured through the undue influence of Elmer Struve. On this appeal the appellant concedes that the testimony upon the issue of undue influence was conflicting and that the special verdict upon that issue is supported by evidence legally sufficient for that purpose. Our examination of the record convinces us that the only competent evidence was that in support of the special verdict upon this issue and that the issue might well have been taken from the jury at the close of the contestant's case. Upon this point we cannot do better than quote the language of *Estate of Perkins*, 195 Cal. 699, 710 [235 Pac. 45, 49]: "There is an utter lack of any proof of pressure brought to bear upon the testatrix which overpowered her mind and overcame her volition at the very time the will was made. (*In re Ricks Estate*, 160 Cal. 450 [117 Pac. 532].)"

Upon the issue of the general unsoundness of mind of the testatrix the record presents the same situation. The only competent evidence in the record unmistakably proves the soundness of mind of the testatrix and the only testimony to the contrary was that this woman, who was seventy-eight years of age at the time the will was executed, had periods of forgetfulness and despondency and suffered great grief over the death of her son Peter who had lived with her for many years prior to his death and who had been a constant friend and companion. That such evidence is insufficient to support a contest on the ground of mental incapacity there can be no longer any doubt in view of the many decisions specifying the *quantum* of proof necessary in such cases. (*Estate of McDonough*, 200 Cal. 57, 62 [251 Pac. 916], where cases are cited.)

Though these were the issues which were tendered in the contest and trial by the jury, the appellant on this appeal insists that the verdict must be overturned because of the insane delusion of the testatrix arising out of the expressions of the belief on her part that the contestant and his brother had taken an unfair advantage of her by recording two deeds conveying certain real property to them. Without deciding that the point is properly before

us at this time, we may briefly review the evidence upon which it is based in order that the issue might be finally determined. The testatrix and Hans Struve were married in Denmark in 1865. Shortly after their marriage they came to Watsonville, California, and settled on a farm of over 300 acres. In 1900 they bought a house in Watsonville which they made their home and in 1902 they surveyed the farm, dividing it into three parts of about 106 acres each and placed three deeds of gift one to each of their sons, Henry, Peter and Edgar, each covering one of the 106 acre tracts, in escrow with a bank in Watsonville. Nothing appears as to the terms of the escrow, but the evidence unmistakably shows that the parents expected that these deeds would be held by the bank in escrow at least until the death of the father, and there is unmistakable evidence that the mother believed that it was the intention of the parties that they should remain in escrow until her death. The sons entered into possession of the respective parcels of land and continued to farm them either individually or through leases to others and left the deeds with the bank until some time in 1923 when Henry and Edgar appeared at the bank and obtained the deeds to their respective parcels. These they had recorded. Peter, who was a bachelor, lived with his mother after his father's death in 1908, until his own death in September, 1925. His deed was left with the bank until after his death when it was withdrawn upon the consent of the mother. A few months after Henry and Edgar recorded their deeds the mother learned that they had done so and apparently became very angry with them, expressing to them and to others that they had violated the agreement with her husband and herself that the deeds should remain in escrow until her death. This feeling that they had taken advantage of her remained with her down to the time of the execution of the will and was given by her as one reason why she did not leave more of her estate to her sons Henry and Edgar. Several years before Peter's death Mrs. Struve had made a will dividing her property equally among her three sons, but about six months after the death of Peter, he having willed the bulk of his estate to her, Mrs. Struve destroyed the former will and executed the will which is now the subject of this contest. In this will

she left the property which she had received from Peter's estate to her grandson Elmer, the proponent of this will, and divided equally between her two sons Henry and Edgar the property which she had owned before Peter's death. Her estate consisted of cash in bank of about $6,000, livestock and farming equipment of the value of about $5,000 and a ranch of about 125 acres of the value of $12,500, all of which was received from Peter's estate. In addition to this she left about $200 in cash, personal effects valued at $100 and the home place in Watsonville of the value of $3,500, none of which was derived from Peter's estate. The $200 in cash and the home place she left to Henry and Edgar in equal shares. Specific bequests were made to others which would come out of the property derived from Peter's estate and the residue was left to her grandson Elmer. In explanation of the bequest to the grandson of the bulk of the estate which she had received from her son Peter the evidence discloses that on many occasions she had stated that it was Peter's wish that what was left of his estate should go to this grandson, who was a great favorite of Peter as well as of the testatrix.

As we understand the argument of appellant it is that because the deeds were left with the bank in escrow without specific instructions as to time of delivery the sons were within their legal rights when they obtained the deeds from the escrow-holder and that therefore the mother had no reason to feel that they had taken any advantage of her or wronged her in obtaining the deeds and placing them of record. The answer is that she entertained the belief that there was an understanding between the parties that the deeds would be left in escrow until her death and that it is of no moment that she was mistaken as matter of law that an oral agreement of this nature did not affect the legal rights of the parties. It appears that her interest in having the deeds remain in escrow was to prevent the sons from disposing of the land, an interest which no doubt arose from the practice of her Danish ancestry to keep the lands of the family intact. Whatever may have been the reason for being put out because of the actions of her sons, it is evident that her belief that she had been wronged by them was nothing more than a mistaken belief which

under no possible theory can be held to be an insane delusion. On this question the cases are all one way. ■ An insane delusion sufficient to affect testamentary capacity must be a product of a diseased mind "which comes into existence without reason or evidence to support it and which is adhered to against reason and against the evidence." (*Estate of Shay*, 196 Cal. 355, 361 [237 Pac. 1079, 1081].) Putting it another way, "Testamentary capacity does not depend upon the testatrix's ability to reason logically or upon her freedom from prejudice. A belief may be illogical or preposterous, but it is not, therefore, evidence of insanity." (*Estate of Perkins, supra.*) "It is a delusion or conception which springs up spontaneously in the mind of a testator and is not the result of his belief or knowledge of any fact which would in reason or in probability furnish evidence in its support." (*Estate of Gunther*, 199 Cal. 119, 125 [248 Pac. 514, 516].)

■ Finally it is argued that the trial court committed error in permitting a witness to testify that the son Peter, prior to the execution of his will in July, 1923, told him that whatever might be left of his property at his mother's death would eventually go to Elmer. The objection is that this testimony was hearsay and not responsive to any issue in the case. The evidence was offered to rebut the testimony of the contestant that the grandson Elmer had practiced undue influence upon the testatrix by which he persuaded her to bequeath to him the bulk of the estate which she had received from her son Peter. Though the testimony of contestant was wholly insufficient to support the charge the proponent felt called upon to meet it by showing that the provisions in the will of Mrs. Struve were in accord with the expressed wishes of her son Peter.

Having failed to make out a shadow of a case on the ground of undue influence the appellant was not prejudiced by the admission of the testimony objected to.

Judgment affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 4, 1929, and a

petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1929.

All the Justices present concurred.