[Civ. No. 7815. First Appellate District, Division Two.—April 28, 1931.]

In the Matter of the Estate of MARY JOSEPHINE POWELL, Deceased. TENNESSEE DAVIS, Appellant, v. KATE ROBERTSON et al., Respondents.

J. Raegen Talbot and Alfred Nelson for Appellant.

R. W. Kearney, E. K. Taylor, Abe P. Leach and Harry E. Leach for Respondents.

NOURSE, P. J.—Mary Josephine Powell died testate on May 28, 1927, at the age of fifty-five years. Tennessee Davis, mother of deceased, contested the will on four grounds—fraud, undue influence, mental incompetency and mental incompetency by reason of insane delusions. The cause was tried with a jury. The trial judge ordered a directed verdict on the first two grounds stated. The jury returned a verdict for the contestant on the ground of mental incompetency. Thereafter the trial court entered judgment in favor of the proponents notwithstanding the verdict. The contestant has appealed on typewritten transcripts.

Upon the issue of fraud there is no pretense that any showing was made and this issue may be dismissed from consideration with the statement that the trial judge committed no error in directing a verdict on that issue.

■ Upon the issue of undue influence on the part of the beneficiary the evidence (if the testimony may be dignified by that appellation) tended to show nothing more than that the testatrix and the beneficiary had been the closest friends for a period of twenty years; that they were both devout followers of the Christian Science religion and both were known as "practitioners"; that following the death of the husband of testatrix in January, 1927, the beneficiary took the testatrix into her home and cared for her until her death in May of that year; that the will was prepared by a reputable attorney who was called in for that purpose by the testatrix; and that the beneficiary made no suggestion or recommendation as to the preparation of the will, the disposition of the property, the consultation with the attorney, or the final execution of the will. We may add that there is no evidence that anyone else, in behalf of the beneficiary, or otherwise, exerted any influence upon the testatrix in respect to her preparation or execution of the will; and that the will as executed was in complete accord with the wishes and desires of the testatrix. With a record of this character we cannot do better than quote the language of *Estate of Perkins,* 195 Cal. 699, 710 [235 Pac. 45, 49] : "There is an utter lack of any proof of pressure brought to bear upon the testatrix which overpowered her mind and overcame her volition at the very time the will was made;" and add the statement found in *Estate of Holloway,* 195 Cal. 711, 724 [235 Pac. 1012, 1018], that "mere evidence that the persons alleged to have exercised such influence had the opportunity to do so and might have done so if they had been so disposed and had possessed such influence, is insufficient." The character of evidence necessary to defeat a will upon the ground of undue influence is discussed in many cases. See *Estate of Purcell,* 164 Cal. 300, 310 [128 Pac. 932] ; *Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525] ; *Estate of Relph,* 192 Cal. 451, 465 [221 Pac. 361] ; *Estate of Haupt,* 200 Cal. 147, 150 [252 Pac. 597] ; *Estate of Hinde,* 200 Cal. 710, 714 [254 Pac. 561].

■ Upon the issue of general mental incapacity, the only competent evidence is that the testatrix was fully competent up to the time of her death. Testimony offered by the contestant tended merely to show that she was in ill

health, did not associate closely with some of her relatives, and spent a large part of her time in reading works upon Christian Science. All that we can find in this testimony is the expression of the witnesses that they concluded that the testatrix *might* have been mentally incapacitated because she did things of which they did not approve. There is not an iota of evidence tending to overcome the presumption of sanity or the positive testimony of the sound mental condition of the testatrix at the time the will was executed. The evidentiary weakness of the testimony upon which appellant relies has been pointed out in numerous decisions. (*Estate of Perkins,* 195 Cal. 699, 703 [235 Pac. 45]; *Estate of Holloway,* 195 Cal. 711, 732 [235 Pac. 1012]; *Estate of Relph, supra; Estate of McDonough,* 200 Cal. 57, 62, 63 [151 Pac. 916]; *Estate of Haupt, supra; Estate of Struve,* 100 Cal. App. 255 [279 Pac. 846].)

Upon the issue of insane delusions the appellant relies upon two proved facts—(1) that the testatrix gave the bulk of her estate to a friend, *expressly* omitted to leave anything to her mother, and treated her brothers and sisters with cool indifference; and (2) that she had expressed the belief that one of her brothers wanted to "put her away" in an institution. All other circumstances cited by appellant in support of this issue are the result of misconstructions of the testimony and do not require consideration.

The refusal to leave her property to members of the family is no evidence of insanity or delusion, because "a testator has the right to make an unjust or an unreasonable or even a cruel will" (*Estate of Martin,* 170 Cal. 657, 663 [151 Pac. 138, 141]; *Estate of Hinde, supra*), and the fact that a will may be unnatural or unjust "creates of itself no presumption that the decedent was incompetent". (*Estate of Smith,* 200 Cal. 152, 158 [252 Pac. 325, 328].) Here the testimony is all to the effect that the family of the decedent was "broken up" about thirty years before her death; that they were living in widely separated homes; that the decedent was the one member of the family who "had culture"; that the others had very little in common with her until after her husband's death when their interest convinced her that they were concerned wholly with the disposition of the property which her husband had left her. The testimony falls so far short of what is necessary to

avoid a will upon this ground that we may merely cite some of the recent cases on the subject such as *Estate of Shay,* 196 Cal. 355, 361 [237 Pac. 1079]; *Estate of Perkins, supra; Estate of Gunther,* 199 Cal. 119, 125 [248 Pac. 514]; *Estate of McDonough, supra; Estate of Clark,* 100 Cal. App. 357, 371 [280 Pac. 204].

As to the second fact upon which appellant relies, the evidence is that decedent's brother urged her to put her property in trust and enter a sanitarium conducted by the Christian Science churches in Brookline, Massachusetts. She resented the suggestion and told him he was trying "to put her away". He denied such intention, but his sister apparently became quite provoked. This feeling was intensified by the suggestion later by a representative of a banking institution that the she turn all her property over to his bank in trust, and by the suggestions of others that she sell some of her real property. Rightly or wrongly she formed the belief that members of her family were showing an undue interest in the disposition of her property. But this is not evidence of an insane delusion—one "which comes into existence without reason . . . and is adhered to against reason". (*Estate of Shay, supra.*) It is nothing more than a mistaken belief of the intentions of others founded upon a fact which might have supported the same belief by every sane individual placed in the same position. Here we should add the admonition found in *Estate of Perkins, supra:* "Care must be taken to differentiate between mere unreasonable opinions and mental derangements. Testamentary capacity does not depend upon the testatrix's ability to reason logically or upon her freedom from prejudice. A belief may be illogical or preposterous, but it is not, therefore, evidence of insanity. (*Estate of Scott,* 128 Cal. 57, 67 [60 Pac. 527].)" (*Estate of Struve, supra.*)

We are not unmindful of the rules relating to nonsuits and directed verdicts, or what is necessary to sustain a judgment *non obstante verdicto.* Having these rules in mind and disregarding all conflicts in the evidence, and granting to the contestant every inference to be drawn from the evidence there still remains a hiatus in the chain of proof that the testatrix was mentally incompetent or subject to any delusion which affected the testamentary act, or that the execution of the will was the result of fraud or

undue influence. There is no claim that contestant was not afforded full opportunity to present her case and there is no assignment of error in the course of the trial. The sum total of contestant's appeal is that the testatrix willed the bulk of her estate to a close personal friend of twenty years' standing and omitted to provide for relatives. Because of this the contestant concludes that there *must* have been something wrong with the testatrix. But, with no substantial proof of any ground of the contest, the judgment appealed from was the only proper judgment to have been entered in the premises.

Judgment affirmed.

Sturtevant, J., and Spence, J., concurred.